See also D.C., 233 F.Supp. 115.

August **FULLER** et al.

v.

**HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL 107**, an unincorporated association, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America

and

Hemingway Transport, Inc.
and
Novick Transfer Co., Inc.

**Civ. A. No. 35122.**

United States District Court
E. D. Pennsylvania.

June 2, 1969.

Edward Bergman, Philadelphia, Pa., for plaintiffs.

F. Emmett Fitzpatrick, Jr., Philadelphia, Pa., for defendant Highway Truck Drivers and Helpers Local 107.

James J. Leyden, Philadelphia, Pa., for defendant Hemingway Transport, Inc., Schnader, Harrison, Segal & Lewis, Philadelphia Pa., of counsel.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DISCUSSION

JOSEPH S. LORD, III, District Judge.

### I.

### INTRODUCTION

The controversy in this case concerns a seniority dispute between employes of two merged interstate carriers. The plaintiffs sought a preliminary injunction on February 21, 1964. Judge C. William Kraft, Jr., denied that motion. Fuller v. Drivers Local 107, 228 F.Supp. 287 (E.D.Pa., 1964). The case is now before us on plaintiffs' motion for a permanent injunction. The parties have agreed to have the case decided on the record established on February 27 and 28, 1964, at the hearing on the preliminary injunction.

### II.

### FINDINGS OF FACT

1. Plaintiffs are truck drivers and helpers employed by the defendant Novick Transfer Co., Inc., ("Novick") before January 13, 1964, at Novick's Motor Freight Terminal in Philadelphia, Pa.

2. Sometime in 1963, an agreement was entered into between Novick and Hemingway Transport, Inc., ("Hemingway") under the provisions of which the motor freight business of Novick and Hemingway were consolidated into one operation under the Hemingway name.

3. Hemingway, Novick and Highway Truck Drivers and Helpers Local 107, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, ("Local 107") were parties to a multiemployer, multi-union Master Collective Bargaining Agreement ("Master Agreement") adopted sometime in 1963 and effective until December 31, 1965.

4. At all times relevant to this seniority dispute the Philadelphia employes of both Hemingway and Novick were represented by Local 107.

5. At the time of the merger approximately 71 drivers were employed by Hemingway at its Philadelphia terminal. Of these a large number had previously been transferred to Hemingway in its acquisition of Brooks Transportation Co. ("Brooks").

6. The acquisition of Novick by Hemingway became effective January 13, 1964. At that time 18 Novick drivers were transferred to the Philadelphia terminal of Hemingway.

7. Before the proposed transfer of the Novick drivers to the Hemingway terminal, a dispute arose concerning the relative seniority of the Novick drivers at the Hemingway terminal. The Novick drivers desired to keep their Novick seniority dates (date of first employment with Novick), while the Hemingway drivers sought to require the former Novick men to accept a new seniority date as of the first day they began employment at the Hemingway terminal. The solution the Novick drivers desired is called "dovetail", while the Hemingway drivers sought "endtail" or "foot of the list."

8. Both the Hemingway drivers and the Novick drivers took the seniority dispute to Local 107. The business agent of Local 107 who had the responsibility of representing both groups of drivers was Joseph Westenberg, to whom both groups of drivers turned.

9. The initial meeting between the stewards from Hemingway and Novick and agent Westenberg was held on December 27, 1963, at the office of the Union. The Novick drivers were represented by their steward, Joseph Morris, and the Hemingway drivers by their steward, Joseph Mautz. At that meeting, agent Westenberg decided that the two seniority lists would be separately maintained until the dispute over seniority was resolved.

10. On January 10, 1964, a second meeting was held at Local 107's offices. Present at this meeting were Westenberg, two other officers of the union and an attorney representing the union, Hemingway's district manager, three stewards from Hemingway (including Mautz) and two stewards from Novick (including Morris).

11. At this meeting, Hemingway's district manager stated that Novick had some outstanding unpaid bills but that it was not insolvent. Morris took a position in favor of dovetailing the two seniority lists, and the Hemingway stewards opposed him. Westenberg then suggested calling the Teamster International Headquarters in Washington, D. C., for their recommendation on the dispute. Westenberg spoke to James Harding, special representative of the General President of the International, James Hoffa. Westenberg told the parties then present that the International favored dovetailing the two lists. Westenberg then stated that the Hemingway stewards had the right to file a grievance objecting to the International's proposed solution, and that both he and Al Berman, another business agent of Local 107, would sign the grievance.

12. On January 14 or 15, agent Westenberg and Hemingway steward Mautz made a trip to Teamster Headquarters in Washington, D. C. Westenberg and Mautz visited James Harding, the same International representative who advised Westenberg by telephone on January 10 that the International favored dovetailing the Novick drivers. Mautz presented the Hemingway drivers' point of view to Harding in the presence of Westenberg.

13. Westenberg did not tell any of the former Novick drivers that he was making this trip to Washington. The former Novick drivers learned about the trip on or about February 3, 1964, after the Joint Area Committee decision.

14. The grievance procedure under the Master Agreement provides both for a Joint Local Committee and for a Joint Area Committee, each composed of equal union and management representation. The Joint Local Committee was omitted in the processing of this seniority dispute.

15. The Joint Area Committee is composed of representatives of the employer and of the six unions which are parties to the Master Agreement. The rules of the Joint Area Committee provide that no representative of the local union or the employer involved in the dispute can act as a committee member. This rule was observed.

16. The Joint Area Committee hearing to consider the seniority dispute was held in Philadelphia on January 20, 1964. William Fontaine, at that time a representative of the International, presided over the hearing.

17. The hearing was attended by agent Westenberg, several Hemingway stewards, and the Novick steward, Morris.

18. Morris received three days notice of the hearing from one of the Hemingway stewards, John O'Neill.

19. Westenberg supported the position of the Hemingway drivers and requested the Committee to place the former Novick drivers at the foot of the combined seniority list. He referred to the prior merger of Brooks into Hemingway, in which the Brooks drivers had been placed at the foot of the list, and pointed out the unfairness of dovetail to the ex-Brooks drivers.

20. Morris stated that the contract provisions provided for dovetail, and that though it was admittedly unfair in the case of ex-Brooks drivers, it was his opinion that dovetail was the proper resolution of the dispute.

21. On January 20, the Joint Area Committee unanimously decided that the former Novick drivers should go to the foot of the combined seniority lists. The decision was implemented on January 21, 1964.

22. The International Teamsters Union did not attempt to influence the outcome of the Joint Area Committee's decision, either on its own initiative or at the urging of representatives of Local 107.

23. Local 107 did not influence the outcome of the Joint Area Committee's decision of January 20, 1964, through contacts with the International Teamsters, and did not contact members of the Joint Area Committee outside that hearing.

## III.

## DISCUSSION

The parties have agreed that the question for our decision is whether the Union breached its duty of fair representation in its handling of the seniority dispute which culminated in the decision of the Joint Area Committee on January 20, 1964. With that formulation of the issue we concur.

Under the terms of the Master Agreement, Article 5, Section 4(a), the defendant carriers were bound to apply the seniority rules adopted by the Central States Joint Area Committee. These rules provided for the application of dovetail to a merger, except that under Section 8 of Article 6 of those rules the parties to the merger and their employes' collective bargaining agent(s) could agree to a different disposition of the problem. Section 8 of Article 6 also provided that the means for so agreeing to a different resolution of the seniority dispute was the Joint Grievance Procedure provided for in the Master Agreement. That Joint Grievance Procedure was followed in this case.

■■■ Whether this grievance procedure has taken the merits of the dispute out of judicial hands is a question raised by Article 7, Section 4(b), of the Master Agreement which provides:

"Where the Joint Area Committee by majority vote settles a dispute, such decision shall be final and binding on both parties with no further appeal."

The Supreme Court has held these area committee decisions to be final and binding when the parties so designate their "chosen instrument for the definitive settlement of grievances" under their

collective bargaining agreement. General Drivers, Warehousemen and Helpers Local Union 89 v. Riss & Co., 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). It is thus clear that the federal labor policy formulated by the *Steelworker* trilogy, United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), applies to the decision of the Joint Area Committee. The Third Circuit has held that the same court review accorded arbitration should be applied to the "final" decision of a committee as well. Bieski v. Eastern Automobile Forwarding Co., 396 F.2d 32, 37 (1968). That standard of judicial review

> "should turn on the adequacy of that private decision under the contract in terms of the controversy presented." *Id.* at 37–38.

However, it is equally well settled that the employe may still have recourse to the federal courts under section 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a) (Supp. 1968), to vindicate his individual rights in a collective contract if the employe proves that his union violated its duty to fairly, honestly and without hostile discrimination represent his interests in the contractually mandated grievance procedure. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1966); Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, *rehearing denied*, 376 U.S. 935, 84 S.Ct. 697, 11 L.Ed.2d 655 (1964); Bieski v. Eastern Automobile Forwarding Co., 3 Cir., 396 F.2d 32, 38 (1968).

Initially, the plaintiffs point out that the union's position placed it in an "inevitable conflict of interest." This assertion is true. However, as the Supreme Court has remarked, "Conflict between employees represented by the same union is a recurring fact." Humphrey v. Moore, 375 U.S. 335, 349–350, 84 S.Ct. 363, 372 (1964).

> " * * * Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. * * * " *Id.* at 349, 84 S.Ct. at 371.

The plaintiffs rely on two specific facts to support their contentions: the visit by Westenberg and Mautz to Teamster headquarters in Washington, D. C., and Westenberg's presentation of the issues involved in this dispute to the Joint Area Committee.

As to the first, Westenberg's accompanying Mautz to Washington is consistent with his position that the Hemingway-Novick merger should be treated the same as the Hemingway-Brooks merger, and that it was unfair to "bump" the ex-Brooks men a second time. We do not think that Westenberg's actions constitute "arbitrary, discriminatory, or bad faith" conduct on his part. Westenberg was performing what he saw to be his duty to explain the peculiar facts of the Hemingway-Novick situation, *i. e.*, the prior Brooks merger, to the International. Of course, the plaintiffs' position does not stop there. They would have us infer from the fact that such conversations occurred that the International Teamsters' position on the seniority question had changed because of that conversation. This argument assumes that Mr. Fontaine would not have voted for endtail if Mautz and Westenberg had not talked to Harding. Unfortunately for the plaintiffs, there is no evidence that such was the case. For all that appears on this record, the International Teamsters' position never changed in favor of dovetail as a solution to seniority disputes resulting from mergers, and Mr. Harding's position, when telephoned, expressed that of the International

Teamsters both before and after the Joint Area Committee decision. While it certainly would have been better for Westenberg to take a Novick steward with him to Washington, his failure to do so does not rise to a breach of his union's duty of fair representation absent evidence that his visit changed the position of the International Teamsters, which in turn influenced the decision of Fontaine. In short, "there is no substantial evidence of fraud, deceitful action, or dishonest conduct. * * * We find in this evidence insufficient proof of dishonesty or intentional misleading on the part of the union." Humphrey v. Moore, 375 U.S. 335, 348–349, 84 S.Ct. 363 (1964). The doctrine of fair representation does not encompass judicial destruction of privately mediated resolutions of grievances simply because the Union's good faith activity on behalf of one group of employes "might possibly" have changed the result.

■ The plaintiffs also argue that the Union breached its duty of fair representation because Westenberg erred in not relating to the Joint Area Committee that mergers between other, different interstate carriers in the Philadelphia area received dovetail treatment, and that in five of the other six cities in which Novick and Hemingway terminals were merged dovetail was utilized. We do not consider this omission to constitute dishonesty or hostile discrimination. Any such statements by Westenberg would have been largely irrelevant to the issue before the Committee. Certainly one purpose in employing an area-wide committee to resolve grievances is the incorporation of a tribunal versed in local labor-management practices. In resolving this grievance, the Committee members were surely expected to draw upon their own experience, which doubtless included other area mergers between carriers. Westenberg referred to what he considered the controlling fact: the earlier Brooks-Hemingway merger. We think he acted reasonably.

Further, Joseph Morris, the Novick steward, was present at the hearing and made a statement which included the argument that the contract prevented any treatment different from dovetail, and himself admitted that it was unfair to knock the ex-Brooks drivers down the seniority ladder once more. Under these circumstances, the Supreme Court's language is again appropriate:

"* * * The * * * employes made no request to continue the hearing until they could secure further representation and have not yet suggested what they could have added to the hearing by way of facts or theory if they had been differently represented. The trial court found it 'idle speculation to assume that the result would have been different had the matter been differently presented.' We agree. * * *" Humphrey v. Moore, 375 U.S. 335, 350–351, 84 S. Ct. 363 (1964).

■ Neither are the plaintiffs correct in their assertion that the union erred in "taking sides." It was not only proper, but in furtherance of the federal labor policy for Local 107 to have vigorously advocated one solution for this dispute. The union should not be "neutralized when the issue is chiefly between two sets of employees. * * * To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes. * * *" Humphrey v. Moore, 375 U.S. 335, 349, 84 S.Ct. 363, 372 (1964).

The Third Circuit has substantially reinforced this position in Bieski v. Eastern Forwarding Automobile Co., 396 F.2d 32 (1968). There, the court noticed that the union had remained neutral before the area committee invoked to resolve a seniority dispute, and found that such neutrality made less likely the effective resolution of the dispute because there was no effective adversary process so obviously contemplated by the parties to the collective bargaining agreement. Id. at 39–40. It seems obvious to us that Local 107 cannot be faulted for its presentation before the Joint Area Committee.

It is worth noticing that management's interest in the resolution of this seniority dispute was not biased in favor of endtail in the manner that it was in *Bieski*. It appears on this record that Hemingway is paying some seniority-based benefits on the basis of the employe's date of first employment with Novick, *e. g.*, vacations. Therefore, the Committee decision is not robbed of its impartiality by the total alignment of its management members with the Union representative. *Compare* Bieski v. Eastern Automobile Forwarding Co., 396 F. 2d 32, 40 n. 15 (C.A.3, 1968).

## IV.

### CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter. Labor Management Relations Act, § 301(a), 29 U.S.C.A. § 185(a) (Supp.1968).

2. The Joint Area Committee had jurisdiction to hear the seniority dispute between employes of Novick and Hemingway at Hemingway's Philadelphia terminal, and properly and reasonably exercised its authority under Article 5, Section 1, and Article 7, Section 4(a) of the Master Agreement and paragraph 8 of the Central States Rules as incorporated by reference in the Master Agreement.

3. The submission of the seniority dispute as a grievance was in accordance with the Master Agreement and did not constitute a breach of Local 107's duty of fair representation to the Novick employes.

4. Local 107 did not breach its duty of fair representation in its handling of the seniority dispute between its members who were employes of Novick and Hemingway.

5. The decision of the Joint Area Committee is final and binding on all parties under Article 7, Section 4(b) of the Master Agreement.

6. The plaintiffs are not entitled to relief, and the motion for a permanent injunction is hereby denied.