**Mark G. ALBERT et al., Plaintiffs,**

v.

**CHEMICAL LEAMAN TANK LINES, INC., a corporation, and Ryder Truck Lines, Inc. (Tank Lines Division), a corporation, Defendants.**

**No. 70-30.**

United States District Court,
S. D. West Virginia,
Charleston Division.

June 5, 1972.

Rudolph L. DiTrapano, Charleston, W. Va., Walter L. Wagner, Jr., Dunbar, W. Va., for plaintiffs.

Carl F. Stucky, Jr., Charleston, W. Va., John J. McAleese, Jr., William W. Patten, II, Philadelphia, Pa., Leonard A. Jaskiewicz, Washington, D. C., for defendants.

## MEMORANDUM ORDER

KENNETH K. HALL, District Judge.

Plaintiffs are forty-four former employees of defendant Ryder Truck Lines, Inc., a corporation merged with defendant Chemical Leaman Tank Lines, Inc., pursuant to the report and order of the Interstate Commerce Commission, dated September 5, 1968, and made final on May 5, 1969. In the absorption transaction between the two defendant corporations, eventually resulting in the merger of Ryder Truck's Tank Line Division into Chemical Leaman, plaintiffs claim they were wrongfully deprived of seniority rights and suffered pecuniary losses. Some claim loss of employment. All plaintiffs ask for actual and punitive damages, except Paul N. Williams and Chester Winterstein who simply ask for damages. At the time all plaintiffs, except Howard F. Mack and Calvin H. Pauley, were covered by and included in a collective bargaining agreement known as the "West Virginia-West Penn Tank Haul Agreement", effective from December 2, 1965, through October 31, 1969. The authorized bargaining agent under the Agreement was Local No. 175, a union affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The forty-two members of the bargaining unit were employed as drivers or maintenance personnel at Ryder Truck's terminal at Nitro, West Virginia, serving Ryder Truck's Tank Line Division in its interstate motor carrier transportation of liquid and dry bulk commodities.

On June 23, 1966, the two defendants, Chemical Leaman and Ryder Truck, entered into a written agreement whereby Ryder Truck was to transfer its Tank Line Division operating authority and assets to Chemical Leaman. On July 20, 1966, the two defendants jointly applied to the Interstate Commerce Commission for approval of the transfer. The application and related papers designated the proposed transfer as a purchase. By order of September 12, 1966, the Commission granted temporary authority for Chemical Leaman to operate the Ryder Truck Tank Line Division under lease arrangements pending Commission action on the transfer application. On October 2, 1966, Chemical Leaman commenced operating the Ryder Truck Tank Line Division business. Implicit in these transactions and in the subsequent consolidation of the terminal facilities, as hereinafter noted, were management and economic factors then pressing upon Ryder Truck's Tank Line Division.

Operations from Ryder Truck's Nitro terminal were terminated on February 11, 1967, and all operations of the combined business of Chemical Leaman and Ryder Truck were thereafter from Chemical Leaman's terminal at Institute, West Virginia. In the transfer of the Ryder Truck operations from the Nitro terminal to the Institute terminal and the consequent joint operations from the Institute terminal, question arose as to the method and procedure for the constitution and administration of the seniority lists for the drivers and maintenance personnel of the combined terminal operation, including plaintiffs in this action. The question was whether to dovetail the transferring Ryder Truck personnel into the existing Chemical Leaman seniority rosters in the order of the earliest date of hire of each employee or to place the transferring personnel at the bottom of the seniority lists. Normally dove-

tailing would provide earlier and preferred work calls for the transferred personnel, whereas tailending the transferred employees at the bottom of the seniority rosters would result in later and less preferred work calls for them. "Dovetailing" is a labor relations term referring to some system of unifying, on one "board", two previously separate seniority lists. Bieski v. Eastern Automobile Forwarding Co., 396 F.2d 32, 35 (Cir. 3rd 1968). The answer to the seniority question in this action is largely dependent upon provisions of Section 8.6(b) of the bargaining agreement, which contains the following language:

Section 8.6 Seniority Rights

\*      \*      \*      \*      \*      \*

(b) Mergers and Acquisitions or Purchases: The following rules shall govern the exercise of seniority rights by the employees of the Employer and the employees represented by the Local Unions party to this Agreement but only in the specific situations set forth below.

(1) Merger: When two or more companies merge their operations then the employees of the respective companies shall all be placed on one seniority roster in the order of the earliest date of hire of each of the employees with their respective Employer.

(2) Acquisition or Purchase: When one company acquires or purchases control of the business of another company then the employees of the company so acquired or purchased shall be placed at the bottom of the acquiring or purchasing company's seniority roster in the order of their payroll or company seniority with the former company.

(3) Proof As To Nature of Transactions: The decision of the Interstate Commerce Commission or State Regulatory Body shall be considered as presumptive proof as to the nature of the transaction relative to mergers, purchases, acquisitions, and/or other combinations of two or more contract or common carriers.

(4) The parties acknowledge that specific situations may arise which may not be covered by the above rules, or in which the parties may feel that different treatment of the problem is necessary. In such situation the Employer, the Unions involved, and the Joint Committee may mutually agree to such disposition of the seniority problems, as in their judgment is appropriate under the circumstances. The Joint Committee shall have the authority to add to or to modify these rules in specific situations presented to it.

The bargaining agreement, including the provisions relating to seniority rights, applied alike to the Chemical Leaman employees and the Ryder Truck employees, since all were covered by the same agreement and were represented by th same bargaining agent, Local No. 175. In this situation the principle of fair ·representation by the bargaining agent becomes manifest. In Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed. 2d 842 (1967), the Court observes:

.   .   .   .   Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.
.   .   .

Discussions and negotiations between the employees, the employer and the bargaining agent failed to resolve the seniority issue. The matter was presented to the West Virginia-West Penn Tank Haul Joint Committee constituted pursuant to Section 6.3 of the agreement, which provides:

Section 6.3 Joint Committee

The Unions and the several Employers who are signatories to this Agreement shall organize, for the duration of this Agreement, a Joint Committee

to be known as West Virginia-West Penn Area Tank Haul Joint Committee (hereinafter referred to as the "Joint Committee"). Any panel of the Joint Committee hearing a case shall consist of a minimum of three (3) representatives of the Employers and three (3) representatives of the Union, unless otherwise mutually agreed, but at all times shall consist of an equal number of designated representatives of the Employers and the Union.

It shall be the function of the Joint Committee or a panel thereof to settle disputes and grievances which cannot be settled in accordance with Section 6.2. The Joint Committee shall meet regularly and shall formulate rules of procedure to govern the conduct of its proceedings. A decision by a majority of any panel of the Joint Committee shall be final and binding on the parties and employees involved. Failure of either party involved to comply with any final decision of or to submit to the jurisdiction of the Joint Committee shall give the other party the immediate right to all legal and economic recourse.

On February 8, 1967, the Joint Committee decided that the transaction between Chemical Leaman and Ryder Truck for transfer of the operating rights and assets of Ryder Truck's Tank Line Division was a purchase. Under Section 8.6(b) (2), above quoted, Ryder Truck's transferring personnel were required to be placed at the bottom of Chemical Leaman's combined seniority rosters. The Committee's decision that the transaction was a purchase by Chemical Leaman finds basis in fact in the application for transfer filed some seven months earlier with the Interstate Commerce Commission and in other instruments and proceedings relating thereto.

The Interstate Commerce Commission, in its report and order of September 5, 1968, approving the transfer of Ryder Truck's Tank Line Division operations to Chemical Leaman, held that the transaction was a merger and conditioned the

approval on dovetailing the Ryder Truck personnel into Chemical Leaman's seniority rosters consistent with Section 8.6 (b) (1) of the agreement as above quoted. The Commission's decision did not become final until May 5, 1969. On June 16, 1969, the seniority status of the Ryder Truck personnel was again presented to the Joint Committee which noted the Interstate Commerce Commission's decision that the business transfer was a merger, and not a sale or acquisition, and recognized that the Commission's ruling was presumptive proof as to the nature of the transaction under provisions of Section 8.6(b) (3) of the bargaining agreement. Thereupon, the Committee decided that the Ryder Truck personnel should be dovetailed into Chemical Leaman's seniority rosters, in accordance with requirements of the agreement, effective as of 12:01 A.M. on June 29, 1969. Further, the Committee decided and held:

> In reference to the Union claim for compensation for lost earning opportunities of the former Ryder employees as a result of being placed on the bottom of the combined seniority list, this claim is denied, because of the unique circumstances of this case, and because the I.C.C. for the first time in a case of this kind attempted to interpret the labor agreement, and where the Joint Committee previously relied in good faith on the application of the employers for the grant of temporary authority by the I.C.C. as well as the decision of the hearing examiner of the I.C.C., no employees shall receive any money damages because the employees may have been adversely affected by the previous decision of this Committee. However, if this present decision of the Committee is not followed by either the Company or by the Local Union, a damage claim will be entertained as a result of this refusal to comply with this decision.

Chemical Leaman complied with the Committee's decision and ruling as on June 29, 1969, dovetailing the transferring Ryder Truck personnel into the sen-

iority rosters in accordance with Section 8.6(b) (1) of the bargaining agreement.

Early in the transaction involving the transfer of Ryder Truck's Tank Line Division assets and operating authorities to Chemical Leaman, the employees involved were represented by the bargaining agent in negotiations as to employee seniority rights. The employees were represented in person and by their bargaining agent before the Joint Committee incident to both of its decisions pertinent to this action. Plaintiffs were represented before the Interstate Commerce Commission, in its consideration of the transfer, and their position and views are noted in the Commission's report.

Jurisdiction in this action, commenced in this Court on February 16, 1970, is based on provisions of the Labor Management Relations Act, Section 301(a), 29 U.S.C.A., § 185(a), on the theory that the bargaining agreement was violated by defendants when the Ryder Truck personnel were placed at the bottom of Chemical Leaman's seniority rosters pursuant to the Joint Committee's action on February 8, 1967. Paragraph 9 of the complaint states that "the violation of the contract was malicious and in wanton disregard of the rights of these plaintiffs."

Defendants were allowed until June 1, 1970, to answer or file motions and on that date filed a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure. The motion states that "there is no genuine issue as to any proposition of fact material to the disposition of this action against all plaintiffs and in favor of defendants and that defendants are entitled to judgment as a matter of law." The motion is supported by affidavits incorporating documentary materials and by memoranda of counsel. Counsel for plaintiffs have presented a memorandum in opposition to the motion for summary judgment, attaching thereto three affidavits. Rule 56(e).

After hearing arguments on the motion, the Court directed counsel for plaintiffs and counsel for defendants to prepare and to present to the Court their separate proposed findings of fact and conclusions of law on the several matters involved in the action. The proposed findings and conclusions of counsel have been received and reviewed. On several matters of substance the respective findings and conclusions are irreconcilable and will not be incorporated in this memorandum order.

■ Rule 56(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving parties have the burden to sustain their motion and the matters presented incident to the motion are to be construed most favorably to the parties opposing the motion. Wright, Law of Federal Courts, § 99 (1970).

In their complaint plaintiffs state that they lost seniority rights when placed at the bottom of the seniority rosters of defendant, Chemical Leaman Tank Lines, Inc., resulting in employment and pecuniary losses. All plaintiffs but two claim both "actual and punitive damages." Plaintiffs claim that "the violation of the contract was malicious and in wanton disregard" of their rights. The contract referenced is the West Virginia-West Penn Tank Haul Agreement, above mentioned.

Consistent with provisions of Rule 56, defendants' motion for summary judgment brought into the record by affidavits relevant and pertinent documents, including the West Virginia-West Penn Tank Haul Agreement, the instruments relating to the transfer of Ryder Truck's Tank Line Division assets and operating authorities to Chemical Leaman, the Joint Committee's decisions of February 8, 1967, and June 16, 1969, and the Interstate Commerce Commission's report and order of September 5, 1968.

While plaintiffs' action is against the two employers, and not against the Union, their memorandum in opposition to

defendants' motion for summary judgment for the most part attacks the Union's integrity and fidelity as the bargaining agent in its representation of the employees in their transfer to Chemical Leaman's seniority rosters. The three affidavits attached to plaintiffs' memorandum have been carefully read and considered, although they are not responsive to requirements of Rule 56(e) concerning adverse party affidavits.

Upon the record, the Court finds and concludes:

1. The Court has jurisdiction of the action. Labor Management Relations Act, Section 301(a), 29 U.S.C.A. § 185 (a). Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); Fuller v. Highway Truck Drivers and Helpers Local 107, 428 F.2d 503 (Cir. 3rd 1970); Bieski v. Eastern Automobile Forwarding Co., 396 F.2d 32 (Cir. 3rd 1968).

2. A motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, is appropriate procedure for testing the sufficiency of the pleadings and other record materials as bases for determination of legal rights and liabilities in this action. Price v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 457 F.2d 605, (Cir. 3rd 1972); Local 13, International Longshoremen's & Warehousemen's Union v. Pacific Maritime Association, 441 F.2d 1061 (Cir. 9th 1971).

3. The West Virginia-West Penn Tank Haul Agreement, dated December 2, 1965, is recognized by all parties hereto as the basic contract instrument controlling labor-management relations in this action.

4. The Joint Committee, constituted and composed in compliance with Section 6.3 of the agreement, was lawfully vested with power and authority to decide on matters and issues incident to seniority rights herein involved.

5. The Joint Committee's decision, under Section 6.3 of the agreement, is "final and binding on the parties and employes involved." The decision is subject to judicial review when challenged on grounds that the Committee's action is impaired by the bargaining agent's failure to provide fair representation of the employees. Vaca v. Sipes, 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Thompson v. Brotherhood of Sleeping Car Porters, 316 F.2d 191 (Cir. 4th 1963); Balowski v. International Union, UAW, et als., 372 F.2d 829 (Cir. 6th 1967). The authorized bargaining agent representing employees involved in this action was Local No. 175, a union affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

6. The Joint Committee's decision on February 8, 1967, that the "transaction is a purchase", thereby determining at that time seniority rights of plaintiffs under Section 8.6 of the agreement, is supported by factual bases in the record. The decision will not be overturned unless dishonest, capricious or beyond the Committee's authority under the collective bargaining agreement. Price v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, *supra*.

7. The Committee's decision, as a matter of law, is not impaired by the bargaining agent's asserted failure to provide fair representation for the employees who are plaintiffs in this action, nor is the decision dishonest, capricious or beyond the authority of the Committee under terms of the agreement. Vaca v. Sipes, *supra*, 386 U.S. pages 190–191, 87 S.Ct. 903; Price v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, *supra*. The decision is final and binding and is affirmed.

8. The Committee, on reconsideration of the question of plaintiffs' seniority rights, following the Interstate Commerce Commission's decision that the transaction was a merger, responded by its decision of June 16, 1969, that, in compliance with the terms of the agreement, the decision of the Commission was presumptive proof of the nature of

**1148**

the transaction and that dovetailing of plaintiffs into Chemical Leaman's seniority rosters should be accomplished. The dovetailing was promptly accomplished and effective June 29, 1969.

9. Plaintiffs' complaint, charging that defendants' "violation of the contract was malicious and in wanton disregard of the rights of these plaintiffs", is totally void of foundation. Documentary materials entered in the record by the affidavits incident to the motion for summary judgment established that defendants herein did not violate the contract. The verity of these documentary materials is not questioned. Defendants were obliged to comply with the Committee's decision determining seniority rights of the plaintiffs and, as a matter of law, cannot be legally charged with contract violation.

10. The Interstate Commerce Commission's decision approving the transaction was conditioned on compliance with the requirement that the transferred Ryder Truck employees be dovetailed into Chemical Leaman's seniority rosters, but imposed no condition or requirement that the dovetailing action was to be retroactive. The Joint Committee's decision of June 16, 1969, affirmatively denied plaintiffs' claimed money damages for lost earning opportunities.

11. "The entire record before this court . . . does nothing more than establish that there is a difference of opinion" between the parties. Hardcastle v. Western Greyhound Lines, 303 F.2d 182, 186 (Cir. 9th 1962). "The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." Humphrey v. Moore, 375 U.S. 335, 349, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964). See Fuller v. Highway Truck Drivers and Helpers Local 107, D.C., 300 F.Supp.

643, 648; Balowski, *supra*, 372 F.2d at 834–835.

Upon the foregoing findings and conclusions, and in consideration of the entire record herein, together with the memoranda and arguments of counsel thereon, the Court further finds and concludes that there is no genuine issue as to any material fact necessary to a decision of this action and that defendants are entitled to judgment as a matter of law.