Donald M. TAYLOR, Appellant,

v.

The CHESAPEAKE AND OHIO
RAILWAY COMPANY, a
corporation, Appellee.

No. 74–2190.

United States Court of Appeals,
Fourth Circuit.

Argued April 7, 1975.

Decided June 27, 1975.

C. Richard Grieser, Columbus, Ohio
(Richards, Grieser & Schafer, Columbus,
Ohio, and Sterl F. Shinaberry, Hostler,
Logsdon, Shinaberry & McHugh,
Charleston W. Va., on brief), for appel-
lant.

Fred Adkins, Huntington, W. Va.
(William C. Beatty, Huddleston, Bolen,
Beatty, Porter & Copen, Huntington, W.
Va., on brief), for appellee.

Before BUTZNER, RUSSELL and
WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This appeal is by a FELA complainant
seeking reversal of a grant of summary
judgment in favor of the defendant rail-
road by the District Court. The defend-
ant, in its answer, had set up a number
of defenses, including the execution of a
release by the plaintiff. After the plain-
tiff had been examined on discovery, the
defendant moved for summary judgment
on the basis of the release which the
plaintiff admittedly executed. It was
the position of the plaintiff that the re-
lease was void for mutual mistake. Con-
cluding that there was no genuine issue
of fact with reference to the validity of
the release and finding the release an
absolute bar to recovery by the plaintiff,
the District Court granted summary
judgment. We disagree and reverse.

■ It is axiomatic that summary
judgment is never authorized if there is
any genuine issue of fact between the
parties and that, in determining whether
there is any such issue, the facts, includ-
ing any legitimate inferences therefrom,
are to be viewed in the light most favor-

able to the opposing party.[1] It is equally settled that the validity of a release attacked in a FELA case is governed by federal law,[2] which recognizes mutual mistake as a ground for voiding a release.[3] The question on this appeal, as it was in the District Court, thus is: Was there sufficient evidence in the record before the Court of mutual mistake to constitute a genuine issue of fact in the case? To resolve this question requires some review of the plaintiff's testimony on discovery.

The plaintiff testified that he was injured on April 21, 1970, while attempting to throw a lever for a derail switch. That night, after finishing work, he went to the railroad hospital and was x-rayed. He was advised at the hospital that the x-rays showed no injury and that his injuries consisted simply of a strained back. He was later given therapy and continued to see the physician treating him for about two months. It is not clear whether the physician treating him was retained by the railroad or by the injured employee. On June 8, 1970, he was told by Dr. Vaziri, who had been treating him at the hospital, that he had nothing wrong with his back, only a strain and that he was then able to return to work. As a result of this advice, he visited the railroad claim agent, because, as he testified, the latter had told him to come to see him when the doctor released him to return to work. The claim agent and the plaintiff discussed on this occasion the settlement of the time lost on account of plaintiff's injuries. They agreed on a settlement of $2,000, based largely on a calculation of lost time. A written release was then signed by the plaintiff. The release provided, among other provisions:

Both the undersigned and the Railway Company do now acknowledge that the injuries which the undersigned sustained may be permanent and progressive; that recovery may be uncertain and indefinite and that injuries * * * may not now be fully known and may be more numerous and more serious than now believed. In making this SETTLEMENT AND FINAL RELEASE the undersigned relies wholly upon his or her own judgment and has not been influenced to any extent whatever by any representation or statement of the claim agent, doctors, or other representatives of the Railway Company. * * *

The word "injuries", where used in this SETTLEMENT AND FINAL RELEASE, includes all injuries which are unknown * * * and includes all consequences of such injuries which may hereafter develop as well as consequences now developed. This settlement is intended to be final, the undersigned taking his or her chances that the injuries may prove to be more serious than now believed.

The employee, in his testimony, claimed that he continued to have trouble with his back and finally, many months later, Dr. Vaziri, after a myelogram, concluded that the employee had a ruptured disc. The plaintiff would relate that condition to his back injury in 1970.

■ It is possible to conclude from the plaintiff's testimony that at the time he executed the release both he and the railroad agent assumed, on the basis of

---

1. See *Adickes v. Kress & Co.* (1970) 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142; *Albert v. Chemical Leaman Tank Lines, Inc.* (D.C. W.Va. 1972) 344 F.Supp. 1141, 1146, aff'd. 475 F.2d 1399, *cert. den.* 414 U.S. 858, 94 S.Ct. 164, 38 L.Ed.2d 108; *Rodway v. United States Department of Agriculture* (1973), 157 U.S. App.D.C. 133, 482 F.2d 722, 727; *First National Bank of Cincinnati v. Pepper* (2d Cir. 1972) 454 F.2d 626, 629.

2. *Dice v. Akron, C. & Y. R. Co.* (1952) 342 U.S. 359, 361, 72 S.Ct. 312, 96 L.Ed. 398.

3. *Wooten v. Skibs A/S Samuel Bakke* (4th Cir. 1969) 431 F.2d 821; *Atlantic Greyhound Lines v. Metz* (4th Cir. 1934) 70 F.2d 166, 168–9, *cert. denied* 293 U.S. 562, 55 S.Ct. 73, 79 L.Ed. 662; *Camerlin v. New York Cent. R. Co.* (1st Cir. 1952) 199 F.2d 698, 703.

*Cf., Heston v. Chicago & North Western Railway Co.* (D.C.Ill.1972) 341 F.Supp. 126, 128 (the mistake being in this case "as to the exact future effect of an injury which was fully known to the plaintiff at the time of the settlement to be of a permanent, painful and serious nature.")

Dr. Vaziri's advice, that the plaintiff had no serious, permanent injury. It is inferable from the record that Dr. Vaziri was selected by the railroad to treat the plaintiff. Neither party to the release, it would seem, understood at the time that the plaintiff had sustained a ruptured disc but both proceeded, as we have said, on the basis that the injury sustained by the plaintiff was merely a temporary, though painful strain. Had they felt otherwise, it would have been unlikely that a modest settlement, covering substantially little more than lost time to that date, would have been made. These facts, and the reasonable inferences therefrom, are sufficient, in our opinion, to make the validity of the release an issue of fact to be resolved by the jury.

The railroad emphasizes on argument that the broad language of its release covered not simply injuries as they were understood at the time of the execution of the release but any that might subsequently develop. It urges that such language undermines the plaintiff's claim of mutual mistake based on disability then unknown and later discovered. Strictly and literally read, this might be the construction of the release. This same contention, however, was advanced and answered in *Wooten v. Skibs A/S Samuel Bakke, supra* (431 F.2d at 822). There the Court said that a release with language similar to that here, a release which the evidence indicated had been bargained for on the mistaken assumption that the injured employee's injuries had not resulted in a "present permanent disability," would not support the grant of summary judgment, but that in such a case, the issue of the invalidity of the release on account of mutual mistake was for the jury. A similar result must follow here.

The grant of summary judgment is accordingly reversed and the cause is remanded to the District Court.

Reversed.