**Michael D. LOOSE**

v.

**CONSOLIDATED RAIL CORPORATION.**

**Civ. A. No. 81–1432.**

United States District Court,
E. D. Pennsylvania.

Feb. 4, 1982.

James Murray Lynn, Philadelphia, Pa., for plaintiff.

D. Scott Morgan, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

HUYETT, District Judge.

This case involves the validity of a general release executed between plaintiff and

defendant Consolidated Rail Corporation (ConRail) for injuries sustained by plaintiff while in the scope of his employment. Before me is defendant's motion for summary judgment.

Plaintiff Michael D. Loose, a wheel inspector foreman at the Reading Wheel Shop, was working in the wheel shop supervising the assembling and mounting of freight wheel sets on April 18, 1978, when a machine known as an upender malfunctioned, causing a 750 pound wheel to fall to the ground. While attempting with the help of co-workers to lift the wheel back into place, plaintiff suffered an injury diagnosed almost immediately as a right inguinal hernia. Plaintiff's affidavit ¶¶ 5 and 6; exhibit B to defendant's motion for summary judgment. Subsequent treatment records dated May 16, 1978 and June 23, 1978, disclose treatment and surgery to repair the same condition. Exhibits C and D to defendant's motion. Plaintiff worked from the date of his injury until the date of surgery, May 10, 1978, following which he was out of work until June 6, 1978.

On July 20, 1978, approximately three months after the accident, plaintiff executed a general release "from all claims, demands, actions and causes of action of every kind whatsoever ... [from] injuries and damages, known or unknown, permanent or otherwise, sustained or received by me at or near Reading ... on or about the 18th day of April, 1978." The general release was given in exchange for a stated consideration of $3,875.00 and to plaintiff's "full satisfaction" from ConRail. Exhibit A to defendant's motion.

The plaintiff instituted this suit under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* and the Safety Appliance Acts, 45 U.S.C. § 1 *et seq.* on April 13, 1981, nearly three years after the accident, seeking $100,000.00 in damages from defendant for causing plaintiff's right ingui-

nal hernia injury by reason of defendant's alleged negligence in "a. Providing unsafe and defective equipment and appliances; b. Providing an unsafe place to work; c. Failure to make a reasonable and proper inspection of the equipment in use in the area in which the plaintiff was working, particularly, of the upender machine and its functions." Complaint ¶ 10. Defendant in its answer asserted the existence of a valid general release as an affirmative defense.

Defendant moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that the general release barred the action. Plaintiff in his answer to the motion, asserted that the circumstances surrounding the execution of the release were sufficient to give rise to triable issues of fact[1] as to whether the release was procured by fraud or mutual mistake or invalid by reason of lack of consideration. Following careful consideration of the motion, memoranda and replies, including the affidavits, depositions and exhibits attached thereto, as well as oral argument on the motion held January 20, 1982, summary judgment will be granted in favor of ConRail for the reasons set forth below.

■ The Supreme Court has held that the validity of releases given under the Federal Employers' Liability Act raises a federal question to be determined with reference to federal rather than state law. *Maynard v. Durham & S. Ry.*, 365 U.S. 160, 161, 81 S.Ct. 561, 562, 5 L.Ed.2d 486 (1961); *Dice v. Akron, Canton & Youngstown R. R.*, 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952). Under federal law, plaintiff has the burden, when seeking to avoid a release, of showing that the contract was tainted either by fraud or mutual mistake of fact. *Callen v. Pennsylvania R. R.*, 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948); *Hohlweiler v. Pennsylvania R. R.*, 294 F.Supp. 1377, 1381 (E.D.Pa.1969), *aff'd*, 436 F.2d 1382 (3d Cir.), *cert. denied*, 404 U.S. 884, 92 S.Ct. 220, 30 L.Ed.2d 167 (1971). When presented with a motion for summary judgment the trial court must view the

---

1. Plaintiff failed to make a timely written jury demand as required by Fed.R.Civ.P. 38(b), and has therefore waived his right to trial by jury.

Fed.R.Civ.P. 38(d); 5 Moore's Federal Practice ¶ 38.43 (2d ed. 1981).

facts and inferences drawn from the facts in the light most favorable to the party opposing the motion. *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In such cases, however, to the extent the opposing party relies upon the existence of disputed facts, those facts must be material and of a substantial nature, not conjectural, speculative, nor amounting to merely suspicions. *Robin Contr. Co. v. United States*, 345 F.2d 610 (3d Cir. 1965); 6 Moore's Federal Practice ¶ 56.15[3] (2d ed. 1981). At oral argument, plaintiff's attorney asserted that an inference of fraud could reasonably be drawn from the "totality" of paragraphs eight and sixteen of plaintiff's affidavit in support of his answer to the motion for summary judgment. Paragraph eight reads as follows:

> Approximately two to three weeks before I was to return to work [ConRail claims agent] Mr. Kovac called me at home and asked how I was doing and if I needed any money. I stated I didn't need any money at that time, but that I was living from my savings. He then asked me if anyone had contacted me and advised me to get a lawyer. I said that no one contacted me and asked why he brought it up. He said that someone at the railroad was recommending a law firm and just wondered if I was contacted. He went on and said there was no reason for me to see a lawyer that he would take care of everything. He said: "After all you don't want to screw the company you work for". Then he stated again, if I needed anything to just call and he would take care of it.

Paragraph sixteen states:

> On July 20, 1978 the day I met Mr. Kovac I was still in great pain from the operation which took place on May 10, 1978. But I had been told by Dr. Jimerson that the pain would go away and that I was actually better than I was before the injury. I told this to Mr. Kovac who said that it was his experience that the pain would last a while but that I would be fine in a few months. I believed both Dr. Jimerson and Mr. Kovac and signed the papers for my pay because of what I had been told.

■ First, plaintiff fails to suggest in what manner the statements allegedly made by defendant's claims agent, Paul E. Kovac, "deceived the plaintiff as to the contents of the release." *See Fournier v. Canadian Pac. R. R.*, 512 F.2d 317, 318 (2d Cir. 1975). Second, plaintiff has not asserted that Dr. Cedric C. Jimerson, plaintiff's treating physician, is an agent of ConRail or that he and ConRail or Kovac entered into some agreement, express or implied, to deceive plaintiff as to either the nature of plaintiff's injury or the contents or effect of the release. Viewed together, paragraphs eight and sixteen cannot reasonably support any conclusion other than that fraud is not present on this record.

There is also no allegation that plaintiff was not fully apprised as to the effect of the release. Plaintiff, a foreman at the time of the execution, has not asserted he is unlearned in the english language or that he did not comprehend the language of the release. In fact, plaintiff not only signed the release, but also wrote: "I have read and understand this release." Exhibit A to defendant's motion.

■■ As previously stated, federal law recognizes mutual mistake as a ground for voiding a release. *Taylor v. Chesapeake & Ohio Ry.*, 518 F.2d 536 (4th Cir. 1975). A triable issue of fact arises in FELA release cases where the evidence indicates the release was "bargained for on the mistaken assumption that the injured employee's injuries had not resulted in a 'present permanent disability' ...." *Id.* at 538. The plaintiff's claim in *Taylor* concerned an injury unknown at the time of execution of the release and later discovered. *Id.* Specifically, plaintiff and defendant in *Taylor* accepted and bargained on the basis of a diagnosis that plaintiff had suffered only a back sprain, later discovered to be, in fact, a ruptured disc. *Id.* at 537. The Fourth Circuit's refusal in *Taylor* to permit a grant of summary judgment was consistent with the corollary rule in FELA release cases that a mistake is sufficient to avoid a release only when the mistake goes to the nature of the injury, not to the expected course of healing. *Edwards v. Western & Atlantic R. R.*,

552 F.2d 137 (5th Cir. 1977) (affirming a grant of summary judgment), *citing Robertson v. Douglas Steamship Co.*, 510 F.2d 829, 836 (5th Cir. 1975); *Heston v. Chicago & North Western Ry.*, 341 F.Supp. 126 (N.D.Ill.1972). *Cf. Dorenzo v. General Motors Corp.*, 334 F.Supp. 1155, 1157 (E.D.Pa. 1971), *appeal dismissed*, 474 F.2d 1339 (3d Cir. 1973) (Pennsylvania law). As the Fifth Circuit has explained, a mutual mistake "concerning the *extent* and *outcome* of injuries ... are necessarily future rather than present facts [and should not serve as grounds for setting aside a release, whereas a] mutual mistake concerning the nature of the injuries ... is a present fact. The legal distinction must rest on the medical difference between diagnosis and prognosis." *Robertson v. Douglas Steamship Co.*, 510 F.2d at 836 (emphasis by the court).

■ Applying the foregoing analysis, the present injury has been diagnosed from the date of the accident as a right inguinal hernia. Exhibits B, C and D to defendant's motion; plaintiff's affidavit in support of answer ¶¶ 5 and 6. Plaintiff has not challenged the diagnosis. Further, despite the fact that this action was instituted approximately 10 months ago and the discovery deadline is now passed, plaintiff has not sought nor submitted to the court or opposing counsel any medical reports, tests, X-rays or opinions in support of his contention that he continues to suffer from pain resulting from the injury. Viewing the facts and inferences to be drawn therefrom in the light most favorable to plaintiff, no mutual mistake existed as to the nature of plaintiff's injuries at the time the release was executed. *Edwards v. Western & Atlantic R. R.*, 552 F.2d at 138.

■ With respect to plaintiff's third contention, that there is a genuine issue of fact concerning the presence of consideration for the release, the Supreme Court has stated that " '[i]n order that there may be consideration, there must be mutual concessions. A release is not supported by sufficient consideration unless something of val-

ue is received to which the creditor had no previous right.' " *Maynard v. Durham & S. Ry.*, 365 U.S. at 163, 81 S.Ct. at 563, *quoting Burns v. Northern Pacific Ry.*, 134 F.2d 766, 770 (8th Cir. 1943). For example, if an employee merely receives an amount in wages to which he had an absolute right, the fact that the amount is designated consideration for a release does not make the release valid and enforceable. *Maynard v. Durham & S. Ry.*, 365 U.S. at 163, 81 S.Ct. at 563. Here, plaintiff urges that what he received from ConRail in exchange for the release were his back wages due and owing. The terms of the release flatly contradict plaintiff's assertion. The release form states in bold lettering at the top and bottom of the document that "THIS IS NOT A RECEIPT FOR WAGES." The stated consideration of $3,875 was the sum of two payments, according to ConRail, one check for $3,100 which was paid directly to plaintiff plus $775 which was paid to the Railroad Retirement Board by ConRail on plaintiff's behalf for benefits already received. Exhibits F and G to defendant's motion; exhibit D–1, letter from Railroad Retirement Board; Kovac deposition, at 95–100. As to the $3,100 settlement check which plaintiff endorsed and negotiated (exhibits F and G to defendant's motion), plaintiff's position is that the amount was calculated on the basis of gross back wages he would have earned absent the injury plus an additional $43.57.[2] Plaintiff's response to the motion, at 3; plaintiff's affidavit, ¶ 12. However, plaintiff overlooks the undisputed fact that the $3,100 check ConRail issued directly to him was not subject to federal income taxes. Thus, examining the $3,100 figure alone, the amount was not only in excess of plaintiff's hypothetical gross wages, but also represented a substantial tax savings. Plaintiff has submitted nothing to negate defendant's assertion that he was entitled only to his "net" lost wages, *i.e.*, his paycheck after taxes. Further, with respect to the remaining $775, defendant asserts constituted a lien for which plaintiff was responsible to the Railroad Retirement

---

**2.** Plaintiff's estimate of total gross wages for 33 days lost equals $3,056.73. Plaintiff's affidavit ¶ 12. Plaintiff does not explain how his dollar figure was produced. Defendant's calculation of total gross wages, including overtime, equals $3,026.91. Exhibit D–2.

Board once settlement was reached, plaintiff claims to have no memory of the Railroad Retirement Board's payments to him in 1978, and has not supported his recollection with appropriate documentation. Exhibit D–1; Kovac deposition, at 94–95, 97–100, 103–04; plaintiff's affidavit ¶ 15. Rule 56(e) directs that when a motion for summary judgment is made and properly supported, "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed.R.Civ.P. 56(e); *Season-All Industries, Inc. v. Merchant Shippers*, 417 F.Supp. 998, 1002 (W.D. Pa.1976). A party opposing the motion does not have the right to withhold his evidence until trial. 10 Wright & Miller, Federal Practice and Procedure § 2739, at 715 (1973). In short, it is my conclusion that there is no triable issue of fact concerning the validity of the July 20, 1978 release.