Gary **TENER**, Barbara Ann Pulpan, Gayle M. Karpuszka, Edward A. Kostorny, Barbara Forty, Justin Pikutis, James E. Dubaniewcz, Ronald Phillips, Stephanie C. Prato, Rita Magnes, Margaret Campas and Barbara Schellhase, Plaintiffs,

v.

David H. **HOAG** and Raymond A. Hay, Defendants.

Civ. A. No. 88–0278.

United States District Court, W.D. Pennsylvania.

Oct. 21, 1988.

Edward A. Olds, Pittsburgh, Pa., for plaintiffs.

John Unkovic, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

ROSENBERG, District Judge.

The plaintiffs in this case are employees terminated from Jones & Laughlin Steel Corporation as a result of a plant closing. The plaintiffs are seeking severance payments and liquidated damages under Sections 260.9a and 260.10 of the Pennsylvania Wage Payment and Collection Law, 43 PS. § 260.1 et seq.

The defendants are officers of the LTV—Jones & Laughlin Steel Corporation and LTV Inc. The defendants have brought this case before this court as a result of a removal petition under Section 514(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. (ERISA). The section provides in part:

> Except as provided in subsection b of this section, the provisions of this subchapter and subchapter 3 of this chapter shall supercede any and all State laws in so far as they now or hereafter relate to any employee benefit plan....

The defendants argue that the Pennsylvania Wage Payment and Collection Law of 1961 (WPCL) is pre-empted by ERISA. The purpose of WPCL is to permit employees to enforce agreements with their employers to pay wages and fringe benefits. The WPCL also provides for the Secretary of the Department of Labor and Industry to seek civil and criminal sanctions against employers who do not pay wages and fringe benefits. The WPCL provides in part:

> Every employer who by agreement ... agrees to pay or provide fringe benefits or wage supplements ... must pay or provide the fringe benefits or wage supplements, as required, ... within ten days after such payments are required to be made directly to the employee, or within sixty days of the date when proper claim was filed by the employee in situations where no required time for payment is specified. 43 P.S. Section 260.3(b)

The issue in this case is whether such severance payments and liquidated damages claims are pre-empted by ERISA, 29 U.S.C. § 1144(a). This court finds that these severance payments and liquidated damages claims do not "relate to any employee benefit plan" under 29 U.S.C. § 1144(a) and, therefore, are not pre-empted. For the reasons given below the case will be remanded to Allegheny County Common Pleas Court.

Twelve employees, plaintiffs, of the Jones & Laughlin Steel LTV Corporation were terminated as a result of a plant closing in Pittsburgh. The corporation is now in bankruptcy proceedings in the Southern District of New York. As a result of an agreement made between the Corporation and the terminated employees, the employees were each entitled to a separation benefit of varying amounts based on years of service. The payments were in most cases less than the $10,000 minimum requirement to satisfy diversity jurisdiction by this court. The severance benefits are on a one-time only basis. No further obligation by the defendant is required either in terms of bookkeeping or payment to plaintiffs.

The defendants, David Hoag and Raymond Hay, are respectively the Chief Executive Officer of LTV Steel and Chairman of the Board of LTV Corporation, the parent corporation. It is averred that the defendants failed to make the required payments as contracted.

The defendants removed the case to this court asserting that ERISA 29 U.S.C. § 1001 et seq., as amended, pre-empted enforcement of the WPCL. The defendants have also asserted that this court has no personal jurisdiction over them and the case must be dismissed.

■ The second assertion will be answered first because it is less complex. This court has personal jurisdiction over the defendants. Under *Carpenters Health and Welfare Fund of Philadelphia v. Kenneth Ambrose*, 727 F.2d 279 (3d Cir.1983), questioned in 794 F.2d 100 (3d Cir.1986), this Circuit reviewed the liability of executive officers under the WPCL. That court reviewed the definition of "employer" under 43 P.S. § 260.2a (1981). The Pennsylvania law "includes every person ... corporation, receiver or other officer ... employing any

person in this commonwealth." The 3rd Circuit went on to say that:

"[T]he legislature intended to impose civil liability on persons who hold corporate executive positions such as occupied by the Ambroses...." *Id.* at 283.

The court recognized that although the result seemed harsh, the legislature intended to hold corporate officers personally liable: "Although imposing liability for unpaid pension benefits on persons who have not contractually agreed to make the payments seems a harsh result, in the absence of other available decisions on the issue, we will affirm the district courts decision holding the Ambroses *personally liable* under the WPCL for the delinquent pension benefits contributions." *Id.* at 283. (emphasis added).

Although the 3rd Circuit questioned the Ambrose Case in *McMahon v. McDowell*, 794 F.2d 100, (3rd Cir.), cert. den. 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986) pursuant to the Supreme Court's *Shaw v. Delta Airlines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) and *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), decisions, the 3rd Circuit ruled narrowly on the issue of preempting the WPCL only to the extent of its "relating to" benefit *plans* and not to the issue of personal liability: "*Shaw* and *Metropolitan Life* make it very clear that state laws relating to a *covered plan*, even those that are arguably consistent with the goals of ERISA, are preempted by Section 514(a), 29 U.S.C. § 1144(a). We do not believe *this aspect* of Ambrose can survive *Shaw* and *Metropolitan Life.*" *Id.* at 108 (emphasis added).

In *McMahon*, there was no question on the issue of personal liability of Corporate officers. *Id.* at 108. This court is thus still bound by the *Ambrose* decision and holds that the corporate executives of LTV Inc. and LTV—Jones & Laughlin Steel are subject to the personal jurisdiction of this court.

The second issue before this court is whether ERISA preexempts enforcement of WPCL. The United States Supreme Court has set forth the requirements for removal based on preemption in the case of *Caterpillar Inc. v. Williams*, — U.S. ——, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The Supreme Court stated that state court actions that could have been brought in federal court may be removed. Diversity jurisdiction is not argued in the case at bar. Thus, federal question jurisdiction is required. To obtain federal question jurisdiction, the complaint must be "well pleaded." The Court cited *Gully v. First National Bank*, 299 U.S. 109 at 112, 113, 57 S.Ct. 96 at 97, 98, 81 L.Ed. 70 (1936) in finding that the federal question must be presented on the face of the complaint and may not be asserted for the first time later as a defense. The federal question must be an essential element of the claim. *Gully*, 57 S.Ct. at 96 and *Franchise Tax Board v. Construction Vacation Trust*, 463 U.S. 1 at 10, 103 S.Ct. 2841 at 2846–47, 77 L.Ed.2d 420 (1983).

In preemption cases such as this, the federal question as a defense is unlikely to appear on the face of a well pleaded complaint. *Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542 at 1546, 95 L.Ed.2d 55 (1987). However, Congress may so totally preempt an area of claims by statute that such claims are necessarily federal in character. *Id.* 107 S.Ct. at 1546. The Court in *Metropolitan Life* held that what appears on the face of the complaint is not determinative of whether the case is preempted.

In *Caterpillar Inc.*, the Supreme Court explained the test for the real nature of the claim. The defendants removed the case to federal court in California based on the "artful pleading doctrine." This doctrine holds that a removal court may find that it is the real nature of the claim, not merely the plaintiff's characterization, which determines if a claim is federal. The Supreme Court rejected this *application* of the doctrine in *Caterpillar* because the defendants created the federal claim by ignoring the facts as alleged by the plaintiffs.

Specifically in *Caterpillar*, the plaintiffs, laid off employees of Caterpillar Tractor Co., alleged state law violations of individu-

al employment contracts on the part of Caterpillar. The defendants removed the action to federal district court averring preemption under Section 301 of the Labor Management Relations Act of 1947 LMRA, 61 Stat. 156, 29 U.S.C. Section 185. *Id.* 107 S.Ct. at 2427, 2428. Section 301 jurisdiction covers claims derived from collectively bargained agreements of those claims which are "substantially dependant on analysis of a collectively bargained agreement." *Id.* at 2431.

The Supreme Court agreed that the plaintiffs had collectively bargained for rights which would be covered under Section 301. If they had filed such a claim alleging violations of state laws, such actions would have been preempted. However, they chose to assert only the state claims for individually bargained agreements. Such rights could not be subsumed under collective bargaining rights pursuant to Section 301, thus defeating their state law claims. *Id.* at 2431. The facts alleged by the plaintiffs cannot be restated by the defendants to create a federal issue where none existed before. To do so, instead of making the plaintiffs master of the complaint, would make the plaintiffs master of nothing. The plaintiff in an action may, by relying only on state law, avoid federal jurisdiction.

Similarly in the instant case, the state law claim made by the plaintiffs is factually recast by the defendants from "benefits" to "benefit plan." Yet, defendants' Exhibit "A", attached to the removal petition, states:

> To: Non bargained for salaried employees (former J & L personnel) Of: LTV Steel Company Inc. ...
>
> Your Company has announced a new termination plan ... Concurrently, the Company has terminated the Jones and Laughlin Supplemental Benefit Plan for nonexempt Salaried Employees....

Without extensive factfinding by this court, plaintiffs' characterization of the severance pay as a non-plan, non-bargained for, one-time benefit appears correct. Instead the defendants have characterized Exhibit A as an ERISA type *plan*, which

appears to be a recasting of the facts and law as was done in *Caterpillar.* This court will not allow the defendants to ignore the facts, and allege different facts and different law to obtain federal jurisdiction.

The Supreme Court stated that "the touchstone of the federal district court's removal jurisdiction is not the 'obviousness' of the preemption defense but the intent of Congress." *Metropolitan,* 107 S.Ct. at 1548. This case falls into the area of the State's exercise of legitimate police power to regulate serious local emergency conditions. Both in terms of the legal and factual situation, the case at bar is virtually identical to that addressed by the United States Supreme Court in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In *Fort Halifax,* the Supreme Court stated the intent of Congress in enacting the ERISA and including preemptive powers over the States was to prevent:

> "A patchwork scheme of regulation (which) would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Preemption insures that administrative practices of a benefit plan will be governed by only a single set of regulations." *Id.* 107 S.Ct. at 2217.

On the other hand, where a state:

> "creates no prospect of conflict with a federal statute, there is no warrant for disabling it from attempting to address uniquely local, social and economic problems." *Id.* at 2221.

In *Fort Halifax,* the Court pointed out that the State of Maine had lost some 107 plants causing a loss of 21,215 jobs. Since mostly lower income and manufacturing employees were involved, there was a multiplier effect on the Maine economy which forced additional unemployment from businesses that had directly depended upon the wages paid by the large manufacturers to the employees of the closed plants. In addi-

tion, there was a significant burden created on Maine's local public and private social service agencies. *Fort Halifax, Supra,* at 2221 note 13.

Specifically, Fort Halifax Packing Co. had closed its Winslow Maine plant that had operated for almost thirty years. Negotiations among company, union and state officials failed to result in continuing operation of the plants. Subsequently, over 100 employees were laid off. Forty of the employees had worked at the plant for over ten years. After the plant closed, 11 employees sued under the State's severance pay statute (Me.Rev.Stat.Ann. Title 26, Section 625–B (Supp.1986)). The Maine statute involved a *one time payment* to the employees who were laid off and no continuing series of payments or accountability was required by the employer. *Id.* at 2214.

The Supreme Court held that the "Maine Statute neither establishes nor requires an employer to maintain an employee benefit *plan.* The requirement of a one-time lump sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation ... To do little more than write a check hardly constitutes the operation of a benefit plan." *Id.* at 2218. The purpose of ERISA preemption "make(s) clear that the Maine Statute in no way raises the type of concerns that prompted preemption." *Id.* at 2217.

I take judicial notice of the fact that the economic and social environment in Pittsburgh is quite similar to that in Maine as described by the court in *Fort Halifax.* The unemployed and their families are financially ruined because of the large loss of manufacturing sector jobs here in recent years.

As hundreds of jobs have disappeared, this financial instability lurks everywhere in Pittsburgh, its suburbs and small surrounding towns. As hundreds of jobs have disappeared, families have disappeared, and so has the tax base of many communities. The massive closing down of steel mills has caused insecurity, despair, and loss of self-esteem. A significant burden

has been created on Pennsylvania's public and private social agencies.

■ Because of the similarities between *Fort Halifax* and the instant case, the two prong test established by the Supreme Court in *Fort Halifax* is the appropriate test in the instant case. In *Fort Halifax,* the Supreme Court stated that a civil action under state law is not preempted under ERISA if the "statute neither establishes nor requires an employer to set up an employee benefit plan," *Fort Halifax* at 2218, and if there is a "one-time lump sum payment triggered by a single event," *Id.* at 2218, without requiring an administrative scheme. As in *Fort Halifax,* the statute involved, the Pennsylvania Wage Payment and Collection Law Sections 260.-3(a) and (b) require employers to pay all wages and fringe benefits due to employees in a general law that falls under the police power of the state. There is no requirement for a benefit plan, nor is any administrative scheme required of an employer, but *merely a requirement to pay benefits due.* WPCL, 260.3(b). The Pennsylvania law may not be enforced against a benefit *plan,* because of preemption, but the Pennsylvania law may be enforced against the non-payment of wages and benefits which are *not* within a benefit plan, as in the instant case.

Instantly, as in *Fort Halifax,* it is averred that the employer is obligated to pay a one-time benefit to each employee; this benefit is triggered by a one time event; and the defendants are not required to perform extensive bookkeeping or to keep track of employees long since separated from the company; and the defendants' plant is being permanently closed. The well being of numerous workers and the economy of Pennsylvania are seriously impacted by the closing of this and other plants. A legitimate state interest is involved.

As in *Fort Halifax,* there is no evidence from the facts that the defendants would be burdened with duplication of paperwork or conflicting obligations, and there is no

evidence that the Pennsylvania statute impedes the enforcement of ERISA or conversely that the preemption of WPCL, in this case, would advance the purposes of ERISA. Finally, there is no evidence that enforcement of WPCL would discourage an employer from setting up a welfare benefit plan which is not now in effect, neither would enforcement encourage an employer to dismantle a welfare benefit program that already is in existence.

Defendants argue that the case which controls this proceeding is *Metropolitan Life, Supra.* In that case, the Supreme Court held that a suit in state court raising state causes of action could still be removed to federal court under Sections 502(a) and 514(a) of ERISA, because such claims are "necessarily federal in character by virtue of the clearly manifested intent of Congress." *Metropolitan,* 107 S.Ct. at 1548.

This case is clearly distinguishable on the facts from *Metropolitan Life.* In *Metropolitan Life,* the plaintiff had refused to continue working after his disability benefits had run out. The physicians for the defendants had found the plaintiff employee fit to return to work. Supplemental benefits under the ERISA approved plan were denied. The plaintiff then sued under Michigan state law theories of contract and tort liability.

In *Metropolitan Life,* a single plaintiff employee sued to determine his eligibility for continuation of benefits in an on-going plan from a company which was not closing down a plant. In the instant case, multiple plaintiffs are involved against defendants whose corporation had terminated its operations. LTV had unilaterally set up a benefit for employees based on the number of years of service. No administration scheme was set up, no plan was to be regulated, and no fiduciary was in control whose actions could be brought into question. In short, in the instant case, there is no federal interest in regulating a one-time only benefit to employees who would have

no further tie to the company or to the defendants.

Additionally, in *Metropolitan Life,* there was no overriding social or economic interest of the state that needed to be protected. In the case at bar, a plant closing, whose operations were part of the economic life blood of Western Pennsylvania triggers an overriding state interest that must be protected by this court.

Defendants incorrectly assert that ERISA forecloses any additional rights on the part of plaintiffs regarding benefits when the employees are covered under an ERISA plan. The Supreme Court held in *Pilot Life v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), that a state law regulating insurance companies did not fall within the saving clause in the ERISA preemption provision. The facts of *Pilot Life* are completely different than those in the instant case. This court believes that *Fort Halifax* establishes a more appropriate analysis in the instant case. The Pennsylvania Wage Payment and Collection Law is not preempted from enforcing the payment of severance pay and liquidated damages by the plaintiffs. This matter may properly be handled by the courts of the State of Pennsylvania. The reasoning of the Supreme Court in *Fort Halifax* is directly applicable to the facts of the instant case:

> Such a statute generates no program activity that normally would be subject to ERISA regulation. Enforcement of the [Maine] statute presents no risk either that an employer will evade or that a State will dislodge otherwise applicable federal regulatory requirements. *Halifax,* 107 S.Ct. at 2220.

For the foregoing reasons, this court finds that there is no Federal question involved in this case and, therefore, Federal subject matter jurisdiction has not been shown to exist. This case will be remanded to original jurisdiction of the Common Pleas Court.

The Findings of Fact and Conclusions of Law are incorporated in this Opinion in accordance with Federal Rule of Civil Pro-

cedure 52.[1]

---

**1.** Rule 52. Findings by the Court

"(a) Effect. In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately the conclusions of law thereon.... If an opinion or memorandum of decision is filed, it will be sufficient if the findings and conclusions of law appear, therein."