Catherine J. KILLIAN

and

Richard E. Grossberg, individually and on behalf of all others similarly situated, Plaintiffs,

v.

A. Donald McCULLOCH, Jr., Reef C. Ivey II, Albert J. DiMarco and John E. Sylvester, Defendants.

No. 93–CV–3093.

United States District Court, E.D. Pennsylvania.

Jan. 17, 1995.

Patricia D. Gugin, Alan M. Sandals, Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, PA, Robert A. Rovner, Rovner, Allen, Rovner, Zimmerman & Kats, Feasterville, PA, for plaintiffs.

Ellen Rosen Rogoff, Jonathan Bloom, Bolger, Picker, Hankin & Tannenbaum, Barry

E. Ungar, Carol J. Sulcoski, Mann, Ungar & Spector, Philadelphia, PA, for defendant, McCulloch.

Anthony C.H. Vale, Pepper, Hamilton & Scheetz, Philadelphia, PA, for defendant, Di-Marco.

Thomas A. Masterson, Thomas P. Hogan, Jr., Joseph B.G. Fay, Morgan, Lewis & Bockius, Philadelphia, PA, for defendant, Sylvester.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This Memorandum and Order addresses two outstanding motions in this dispute. The first is a motion filed by the defendants, who seek an award of summary judgment against Plaintiff Catherine J. Killian as to Counts I through V and Count VII of Plaintiffs' Second Amended Class Action Complaint, as well as a summary judgment award against Plaintiff Richard E. Grossberg as to Counts I, VI and VII of Plaintiffs' Second Amended Class Action Complaint. The second motion, filed by the plaintiffs, seeks an order certifying the instant action as a class action and designating the named plaintiffs as class representatives. For the reasons stated below, the defendants' motion for partial summary judgment will be granted in part and denied in part. In view of our disposition of the summary judgment motion, we must deny the plaintiffs' motion for class certification as submitted, but we will allow the plaintiffs thirty days to submit an amended request for class certification.

## I. HISTORY OF THE CASE

### A. Background

This dispute arises out of the collapse of Nutri/System, Inc., (Nutri/System) a private company headquartered and incorporated in Pennsylvania that had occupied a position at the forefront of the weight loss industry before it was placed in involuntary bankruptcy in May of 1993. We have previously set forth the factual background in this case in a prior Memorandum and Order. See Killian

v. McCulloch, 850 F.Supp. 1239 (E.D.Pa. 1994). Because the Court's present task involves a fairly detailed factual analysis, however, we will delineate the salient facts again here before proceeding.

Catherine Killian and Richard Grossberg are former Nutri/System employees. Ms. Killian was based in California for the bulk of her time of employment, while Mr. Grossberg was based in New York and New Jersey during the course of his employment. The defendants, A. Donald McCulloch, Reef C. Ivey, Albert J. DiMarco and John E. Sylvester, were the highest ranking officers at Nutri/System. In 1986, after reorganizing Nutri/System and improving its financial condition, the defendants purchased the company in a management buy-out. Three years later, in March of 1989, Nutri/System's board of directors adopted the Partnership Profit Sharing Plan (the Plan). The Plan represented an effort by management to provide a percentage of the company's profits to key employees who had helped Nutri/System achieve some degree of financial success. At the end of each fiscal year, the company would calculate the number of shares that each Plan participant would receive, and then allocate a percentage of the profits to each participant accordingly. The participants became vested in their shares three and a half years after the company announced the value of the shares, as long as they remained continuously employed during the entire period.[1] Plan participants would be entitled to payment thirty days after the end of each three and a half year period.

Nutri/System's financial difficulties prevented it from fulfilling the Plan's obligations, however. In both 1992 and 1993, the company announced that it could not honor its obligations under the Plan. Nutri/System's board of directors offered to eligible employees a lump sum payment of fifteen percent of the amount originally due in exchange for a release to any claim to further pay-outs. Of the 193 eligible employees, 111 accepted this offer, including Plaintiff Killian. By May of 1993, a petition for involuntary

---

1. The Plan provided that participants who left the company before the completion of the three

and a half year period could receive payment under certain circumstances.

bankruptcy had been filed against Nutri/System.

### B. The Second Amended Class Action Complaint

The plaintiffs filed their original complaint on June 9, 1993. Their second amended class action complaint (the complaint), filed on May 11, 1994, asserts an entitlement to relief under seven counts. The first count alleges a violation of Pennsylvania's Wage Payment and Collection Law, 43 Pa.Stat.Ann. §§ 260.1—260.12 (1992) (WPCL), in that the defendants failed to provide payment of promised wages in breach of the statute. The second and third counts allege a breach of contract and a breach of the implied covenant of good faith, respectively. The fourth and fifth counts allege fraudulent and negligent misrepresentation, respectively. The sixth maintains that the defendants violated ERISA in that they failed to reimburse medical expenses to which the named plaintiffs were entitled, while the seventh count alleges an additional violation of the WPCL in that the defendants failed to authorize the reimbursement of business related expenses and other benefits. By a prior order, Counts VI and VII have been dismissed without prejudice as to Defendant Sylvester.

### II. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

#### A. Summary Judgment Standard

This Court is authorized to award summary judgment "if the pleadings, depositions, ... on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510).

Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2512. With these principles in mind, the Court turns to the substance of the defendants' motion.

#### B. Counts I and VII: The WPCL Claims

The defendants' motion for judgment with respect to the WPCL claims is based on their contention that the WPCL applies only to employment occurring within Pennsylvania. Since Ms. Killian and Mr. Grossberg were never based in Pennsylvania and are not Pennsylvania residents, the argument goes, they cannot bring a claim under the statute. The facts surrounding this argument are not in dispute: both parties agree that the plaintiffs were never based in Pennsylvania and are not residents of this Commonwealth. As a result, this issue is ripe for summary disposition.

The WPCL allows an employee to collect overdue wages and liquidated damages whenever "wages remain unpaid ... for sixty days beyond the date of the agreement, award or other act making wages payable." § 260.10. The issue here, therefore, is whether Ms. Killian and Mr. Grossberg are employees for purposes of the WPCL. The WPCL does not provide a definition of "employee." It does, however, define "employer" as any entity or "agent or officer" of an entity "employing any person in this Commonwealth." Since Nutri/System employed a number of people in the Commonwealth, the defendants do not dispute that they are "employers" for purposes of the WPCL. Further, because Plaintiffs Killian and Grossberg were Nutri/System employees, the plain words of the statute would appear to afford the plaintiffs with a cause of action under the WPCL.

The defendants argue that the legislature's intent was to limit the scope of the statute to employment occurring within Pennsylvania. Their argument has some appeal. A literal reading of the statute would, for example, allow an Arizona-based employee to bring a WPCL claim against his Oregon-based employer as long as that company also employed one person based in Pennsylvania. We cannot conclude that the legislature intended such a result. As a result, we must seek an interpretation that better comports with the WPCL's legislative purpose. While there is scant legislative history to assist us, we are guided by prior decisions, in both the federal and state courts, which note that the WPCL's purpose is to offer protection to workers to whom wages are owed. *See Tener v. Hoag,* 697 F.Supp. 196, 197 (W.D.Pa. 1988) ("The purpose of the WPCL is to permit employees to enforce agreements with their employers to pay wages and fringe benefits."); *Sendi v. NCR Comten, Inc.,* 619 F.Supp. 1577, 1579 (E.D.Pa.1985) (The WPCL "gives 'additional protections to employes by providing statutory remedies for the employer's breach of its contractual obligation to pay wages.' *Ward v. Whalen,* 18 Pa.D. & C.3d 710, 714 (C.P.Allegheny County 1981)."), *aff'd without op.,* 800 F.2d 1138 (3d Cir.1986); *Laborers Combined Funds v. Mattei,* 359 Pa.Super. 399, 518 A.2d 1296, 1299 (1986) (The WPCL's purpose "is to provide an employee with a statutory remedy for an employer's breach of its contractual obligation to remit wages.") (emphasis omitted). Indeed, this Court, in a previous Memorandum in this case, recognized that "[t]he purpose of the WPCL is to allow employees to recover wages and other benefits that are due from employers pursuant to agreements between the parties." *Killian,* 850 F.Supp. at 1255.

The plaintiffs argue that the WPCL was enacted to regulate the conduct of those who employ persons within Pennsylvania. But the language of the cases reflects the clear consensus that Pennsylvania's legislature enacted the WPCL primarily to protect employees. The legislature has a strong interest in enacting legislation to protect those who work in the Commonwealth, but has almost no interest in extending that protec-

tion to those who work outside Pennsylvania. And while the statute assuredly has the effect of deterring wrongful behavior on the part of employers, its primary aim is to ensure that those who are employed in Pennsylvania receive compensation for their work. This conclusion is buttressed by the fact that the plaintiffs have not pointed to a single case, and our research has not uncovered one, in which an out-of-state employee has brought a WPCL claim in a Pennsylvania court. Thus, we hold that the protections contained in the WPCL extend only to those employees based in Pennsylvania. Accordingly, we must grant the defendants' motion for summary judgment as to the claims asserted in Counts I and VII by the named plaintiffs.

## C. *The Release*

The defendants also argue that the release signed by Plaintiff Killian bars her from asserting any claims related to the Plan. Pursuant to the release, Plaintiff Killian agreed to accept $14,886 in exchange for her promise not to sue and forever release Nutri/System and its officers and directors regarding benefits under the Plan. Under Pennsylvania law, "[a] release is binding on the parties thereto, unless executed under fraud, duress or mutual mistake." *Lanci v. Metropolitan Ins. Co.,* 388 Pa.Super. 1, 564 A.2d 972, 974 (1989) (citing *Iman v. Hausman,* 354 Pa.Super. 458, 512 A.2d 41 (1986) and *Price v. Ross,* 339 Pa.Super. 461, 489 A.2d 252 (1985)); *accord Pennsylvania v. Flaherty,* 547 F.Supp. 172, 175 (W.D.Pa. 1982). The language of the release demonstrates the intention of the parties and will govern unless the party attempting to avoid the release unequivocally proves its invalidity. *Reed v. SmithKline Beckman Corp.,* 569 F.Supp. 672, 674 (E.D.Pa.1983).

In an attempt to prove that the release is invalid, Ms. Killian raises two arguments. The first is that the release is not supported by valid consideration. Ms. Killian contends that the amount she received, approximately 15% of the amount coming to her under the Plan, was money already owed. Thus, she cites *McNasby v. Crown, Cork & Seal Co.,* 656 F.Supp. 206, 209 (E.D.Pa.), *appeal dis-*

*missed,* 832 F.2d 47 (3d Cir.1987), and *Loose v. Consolidated Rail Corp.,* 534 F.Supp. 260, 264 (E.D.Pa.), *aff'd without op.,* 692 F.2d 749 (3d Cir.1982), and argues if an employee receives wages to which she is already entitled, the fact that the amount is labeled consideration for release does not make the release valid.

Unfortunately for Ms. Killian, the cases she cites do not convince us as to the invalidity of the release in question. In *McNasby,* the defendant argued that the plaintiff waived a Title VII claim by executing a release form. The Court held that the waiver did not operate to release the defendant from the Title VII claim in part because the waiver made no reference to a Title VII claim. *McNasby,* 656 F.Supp. at 209. Thus, the defendant argued that a waiver form had the effect of releasing it from claims not contemplated by the release. In contrast, the release signed by Ms. Killian purports to release the defendants from the very claims she now seeks to raise: any claims related to Ms. Killian's rights under the Plan. As a result, *McNasby* does not compel this Court to hold the release in question invalid.

*Loose* is likewise unhelpful to Ms. Killian. In that case, the court was confronted with a situation in which a plaintiff who had been injured on the job signed a release in return for $3,875. The plaintiff then argued that the figure he received represented back wages to which he was previously entitled, and could not therefore be consideration for the release. In analyzing the plaintiff's argument, the *Loose* court noted that "if an employee merely receives an amount in wages to which he had an absolute right, the fact that the amount is designated consideration for a release does not make the release valid and enforceable." *Loose,* 534 F.Supp. at 264 (citing *Maynard v. Durham & S. Ry. Co.,* 365 U.S. 160, 163, 81 S.Ct. 561, 563, 5 L.Ed.2d 486 (1961)). Seizing on this language, Ms. Killian argues that amount she received cannot be deemed consideration, as it was money to which she was previously entitled.

A review of the release at issue, however, reveals that the parties clearly understood the payment to be in consideration for Ms. Killian's promise not to sue, and not as a partial payment of the wages to which Ms. Killian asserts a right. The release provides, in pertinent part, as follows: "in consideration of [$14,886], ... the undersigned ... hereby covenants not to sue and to forever release and discharge Nutri/System...." Later, the release identifies as its purpose the "adjustment and settlement of all claims" relating to the Plan. Nowhere in the release is there any mention that the amount tendered to Ms. Killian was in lieu of wages. Thus, we find that the money paid to Ms. Killian was not "an amount *in wages*" to which she was already entitled, but was instead consideration for the release. As a result, we cannot conclude that the release is invalid on this ground.

Ms. Killian's second argument is that she signed the release under "economic duress." Upon review of the evidence submitted, however, we find that Ms. Killian has failed to create an issue of fact as to whether she was unduly pressured into signing the release. First, there is no evidence that Ms. Killian was threatened with physical harm as a means to coerce her into signing the release. Further, the record reveals that Ms. Killian was never threatened by any member of the Nutri/System management team with employment termination in the event she refused to sign the release. Indeed, Ms. Killian concedes in her deposition that she was encouraged to discuss the settlement offer with other employees, and that she consulted with counsel before signing the release.

■ Under Pennsylvania law, where the party attempting to avoid a release had consulted with counsel prior to executing the release, there can be no duress in the absence of a threat of physical harm. *Smith-Kline,* 569 F.Supp. at 675; *Carrier v. William Penn Broadcasting Co.,* 426 Pa. 427, 431, 233 A.2d 519, 521 (1967). Courts have consistently held that mere financial pressure is insufficient to invalidate a release. *Smith-Kline,* 569 F.Supp. at 675. As we noted above, Ms. Killian faced no such pressure. Thus, we find that she was not under duress when she executed the release, and as a

result, we hold that the release is valid.[2] Accordingly, since Ms. Killian is precluded from bring any claims related to the Plan in this lawsuit, the defendants' motion for partial summary judgment as to Ms. Killian will be granted.

### D. *Plaintiff Grossberg's ERISA Claim*

■ Count VI of the plaintiffs' second amended complaint alleges that a number of Plan participants, including Plaintiff Grossberg, were not reimbursed for the medical expenses they incurred while covered by Nutri/System's medical plan and COBRA coverage. With respect to Plaintiff Grossberg, the defendants base their request for summary judgment upon their contention that the expenses for which he seeks reimbursement were incurred after Nutri/System terminated the medical plan. There is some dispute as to the date on which the medical plan was terminated, but for purposes of deciding this motion, we assume it was terminated on May 13, 1993. According to the defendants, the evidence shows that the medical expenses for which Plaintiff Grossberg seeks reimbursement were for services performed on July 22, 1993, the date on which his baby was born. In his deposition testimony, however, Mr. Grossberg testifies that the some of the expenses incurred as a result of the pregnancy were incurred while he was still employed by Nutri/System. Thus, Mr. Grossberg has created an issue of fact as to whether he is entitled to reimbursement for these expenses. Accordingly, Mr. Grossberg's ERISA claim in connection with the medical plan will survive the defendants' summary judgment motion.

### E. *Summary*

Because we have concluded that the intent of the Pennsylvania legislature was to allow only Pennsylvania-based employees to bring suit under the WPCL, we will award summary judgment in favor of the defendants as to the claims asserted by Plaintiffs Killian and Grossberg in Counts I and VII of their second amended class action complaint. Further, we will also issue an order of summary judgment against Plaintiff Killian as to Counts I through V and VII of the complaint because of our conclusion that the release she executed is valid and binding. Finally, we will deny the defendants' request for a summary judgment award against Plaintiff Grossberg as to Count VI of the complaint, since defendants have failed to show that no genuine dispute of material fact exists. We turn now to the plaintiffs' request for class certification and designation of the named plaintiffs as representatives of the class.

### III. *PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*

The plaintiffs have brought a motion seeking to have the action certified and maintained as a class action. The class is defined to include all employees who were participants or beneficiaries of the Plan and who held a vested right to payment pursuant to the Plan's terms.[3] The members of the proposed class include over two hundred employees who were based in eighteen states, including California, New York, New Jersey and Pennsylvania.

### A. *Standard Governing a Class Certification Motion*

■ The party seeking certification bears the burden of demonstrating that the particular case is suited to a class action. *In*

---

2. Ms. Killian argues that duress is present when an employer engages in a wrongful act to force an employee to sign a release. *See Coventry v. United States Steel Corp.*, 856 F.2d 514, 524 n. 12 (3d Cir.1988). According to Ms. Killian, the WPCL expresses a public policy against allowing an employee to sign a release in order to resolve a disputed claim. However, this argument is directly contradicted by section 260.9a(b) of the WPCL, which states that an employee "shall have the power to settle or adjust his claim for unpaid wages." Accordingly, this contention will be rejected.

3. The plaintiffs request certification of the following class:

All persons, other than defendants, who were participants or beneficiaries of the Nutri/System, Inc. Partnership Profit Sharing Plan on or after March 1, 1992. The class also includes Plan participants who left the company prior to March 1, 1992, but whose Plan amounts were vested pursuant to certain exceptions listed in the Plan.

Plaintiffs' Motion for Class Certification at 1.

*re Mellon Bank Shareholder Litigation,* 120 F.R.D. 35, 36 (W.D.Pa.1988). The applicable standard is set forth in the Federal Rules of Civil Procedure. Accordingly, a court will look initially to whether the movant has satisfied four prerequisites: (1) numerosity—whether the class is so numerous that joinder of the parties would be impracticable; (2) commonality—whether there are questions of law or fact common to the class; (3) typicality—whether the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation—whether the representative parties will fairly and adequately protect the interest of the class. Fed. R.Civ.P. 23(a). Further, if all four factors favor certification, a class action can be maintained only if the court then finds that (1) the questions of law or fact that pertain to the members of the class predominate over those questions affecting only individual members and (2) the class action is superior to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3). The analysis will proceed with these principles in mind.

### B. *Discussion*

■ Given our resolution of the defendants' partial summary judgment motion above, it is clear that plaintiffs cannot demonstrate that class certification is warranted. Specifically, we first note that the named plaintiffs cannot meet the typicality requirement. Commenting on this prerequisite, courts have noted that while the threshold for typicality is not high, *In re School Asbestos Litigation,* 789 F.2d 996, 1010 (3d Cir. 1986) (quoting *Jenkins v. Raymark Indus. Inc.,* 782 F.2d 468 (5th Cir.1986)); *Seidman v. American Mobile Sys.,* 157 F.R.D. 354, 360 (E.D.Pa.1994), the requirement will not be satisfied if the factual and legal positions of the named plaintiffs are markedly different from those of the members of the putative class. *Seidman,* 157 F.R.D. at 360. In this case, we have held that Plaintiff Killian has contracted away her right to bring this lawsuit. Further, we have held that neither Plaintiff Killian nor Plaintiff Grossberg is eligible to assert a claim under the WPCL. As a result, the positions of the named plaintiffs are decidedly different from those members of the class who were based in Pennsylvania, or those members of the class who did not sign a release, or those who were unduly pressured to do so.

■ For similar reasons, the named plaintiffs fail to meet the adequacy of representation requirement. Generally, this prerequisite necessitates two inquiries: (1) whether the plaintiffs' attorney is qualified, experienced and able to conduct the litigation in a professional manner, and (2) whether the class representatives have interests antagonistic to those of the class members. *Weiss v. York Hosp.,* 745 F.2d 786, 811 (3d Cir. 1984) (citation omitted), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985); *Seidman,* 157 F.R.D. at 365; *Mellon Bank,* 120 F.R.D. at 38. While the defendants do not contest the suitability of plaintiffs' counsel to litigate this case, it is obvious, given our ruling on the summary judgment motion, that the named plaintiffs cannot adequately pursue the remedies that are available to the members of the putative class. As a result of the plaintiffs' failure to meet the requirements of Rule 23(a), their motion for class certification must be denied.

### C. *Summary and Disposition*

We have concluded that Plaintiffs Killian and Grossberg cannot properly represent the putative class in this case, and as a result, we must deny their motion for class certification. We will allow the class plaintiffs an opportunity to submit, within 10 days, an amended complaint consistent with this Memorandum and Order. Further, plaintiffs will be permitted to submit an amended motion for class certification within 30 days of the issuance of the order.