## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HARSHIKESH PANCHAL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.:  N24C-05-267 EMD CCLD |
| | ) | |
| XO ENERGY WORLDWIDE | ) | |
| LLLP, XO ENERGY LLC, and | ) | |
| SHAWN SHEEHAN, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: January 7, 2025
Decided: March 31, 2025

*Upon Consideration of Defendants' Motion to Dismiss*
**GRANTED in part, DENIED in part.**

Daniel C. Herr, Esquire, Law Office of Daniel C. Herr, LLC, Wilmington, Delaware. *Attorneys for Plaintiff.*

Steven L. Caponi, Esquire, Megan E. Hunt, Esquire, Michael J. Vail, Esquire, K&L Gates LLP, Wilmington, Delaware. *Attorneys for Defendants*.

**DAVIS, J.**

## I.     INTRODUCTION

This is a contract dispute assigned to the Complex Commercial Litigation Division of this Court.  Plaintiff Harshikesh Panchal seeks recovery of unpaid profit-sharing bonuses and reimbursement for unused vacation days from his former employer, Defendant XO Energy Worldwide LLLP ("Worldwide"), an entity affiliated with Worldwide, Defendant XO Energy LLC ("Energy"), and the common controller of Worldwide and Energy, Defendant Shawn Sheehan (collectively with Worldwide and Energy, "Defendants").[1]  Mr. Panchal claims his employment agreement with Worldwide (the "Employment Agreement") entitles him to profit

---

[1] *See generally* Complaint for Declaratory Judgment and Damages ("Compl.") (D.I. 1).

sharing performance bonuses.[2]  Defendants allegedly informed Mr. Panchal that he would receive close to $4.2 million in such bonuses for 2021 and 2022; however, Defendants only paid Mr. Panchal $400,000.[3]  Mr. Panchal brings claims for breach of contract, tortious interference with contract, and violation of the Pennsylvania Wage Payment and Collection Law ("PWPCL") to recover the remaining profit share to which he is allegedly entitled.[4]

Defendants filed the Motion to Dismiss before the Court, seeking dismissal of all claims (the "Motion").[5]  At the outset, Defendants contend the Court lacks personal jurisdiction over Mr. Sheehan and therefore all claims against him must be dismissed pursuant to Rule 12(b)(2).[6]  Additionally, Defendants argue Rule 12(b)(6) mandates dismissal of all claims.[7]  For the reasons set forth below, the Court **GRANTS** in part, **DENIES** in part, the Motion.

## II.    BACKGROUND[8]

### A. The Parties

Mr. Panchal is an individual residing in Pennsylvania.[9]

Worldwide is a limited liability partnership organized under the laws of the United States Virgin Islands with its principal place of business in St. Thomas, Virgin Islands.[10]  Energy is a Delaware limited liability company.[11]  Mr. Sheehan is an individual residing in the United States

---

[2] *Id.* ¶¶ 8-9 (citing Compl., Ex. A ("Employment Agreement") § 4 ("Profit Share Provision")).
[3] *Id.* ¶¶ 13-14, 26.
[4] *Id.* ¶¶ 34-66.
[5] *See generally* Opening Brief in Support of Defendants XO Energy Worldwide LLLP, XO Energy LLC, and Shawn Sheehan's Motion to Dismiss ("MTD") (D.I. 7).
[6] *Id.* at 5-10.
[7] *Id.* at 10-20.
[8] The facts incorporated herein are drawn from the Complaint and accepted as true solely for the purpose of ruling on the Motion.
[9] Compl. ¶ 1.
[10] *Id.* ¶ 2.
[11] *Id.* ¶ 3.

2

Virgin Islands. Mr. Sheehan "is the majority owner of Worldwide and Energy, serving as Principal of both entities."[12]

## B. The Employment Agreement and Profit Share Payments

Mr. Panchal and Worldwide entered into the Employment Agreement on April 14, 2013.[13] Energy is not a signatory of the Employment Agreement.[14] Mr. Panchal's job under the Employment Agreement was "on an 'at will' basis," without any termination date.[15]

In addition to a base salary, the Employment Agreement provided Mr. Panchal could receive certain "incentive compensation."[16] Specifically, Employment Agreement Section 4 states:

> In addition to the Base Salary, Employee may be awarded certain incentive compensation (Profits Share) as determined in the sole discretion of the Employer. At the end of each calendar year, Employer shall evaluate whether Employee shall be awarded a share of Profits for the year then ending.[17]

As part of the Employment Agreement, Mr. Panchal agreed to "certain non-competition [] and non-solicitation restrictions[.]"[18] Also relevant here, the Employment Agreement prohibits Worldwide from assigning its "rights or obligations . . . under this Agreement," except "to any successor . . . to all or substantially all of the business and/or assets of [Worldwide] if such successor expressly assumes and agrees to perform this Agreement."[19]

---

[12] *Id.* ¶¶ 4, 12. At oral argument the Court granted Defendants' Rule 12(b)(2) Motion concerning Mr. Sheehan. *See* Superior Court Proceeding Sheet for Defendants Motion to Dismiss, heard on January 7, 2025 (D.I. 10). Accordingly, Mr. Sheehan is no longer before the Court and allegations specific to him are not further discussed.
[13] *Id.* ¶ 8.
[14] *See generally* Employment Agreement.
[15] *Id.* § 1.
[16] Compl. ¶ 9 (citing Employment Agreement § 4).
[17] Employment Agreement § 4.
[18] Compl. ¶ 62 (citing Employment Agreement §§ 5 (d)-(e)).
[19] Employment Agreement § 9(f)(i).

Mr. Panchal moved to the United States Virgin Islands after he signed the Employment Agreement.[20] Mr. Panchal worked in the United States Virgin Islands for 18 months, during which "Worldwide paid [Mr. Panchal's] wages."[21] In December 2014, Mr. Panchal moved to Pennsylvania.[22] Though the Employment Agreement remained in effect, "Energy employed [Mr. Panchal] and paid [his] wages."[23]

While working in Pennsylvania, "[o]ne or more Defendants . . . agreed that [Mr. Panchal] earned a substantial profit share for 2021 in the amount of $3,148,869."[24] On May 27, 2022, "Defendants declared this amount earned in writing and through a telephone call."[25] Similarly, on June 29, 2023, Defendants informed Mr. Panchal that he earned a "profit share for 2022 in the amount of $1,029,366."[26]

Mr. Panchal returned to the Virgin Islands in January 2022, "to potentially obtain the benefit of certain tax laws regarding" the profit share payments.[27] Unable to obtain any tax benefit, Mr. Panchal moved back to Pennsylvania in June 2023 and worked for Energy, who "paid [his] wages."[28] On February 7, 2024, Mr. Sheehan "released approximately $400,000 to" Mr. Panchal as a profit share payment.[29] Mr. Panchal, however, continued to request the full $4.2 million profit share to no avail.[30] Mr. Sheehan "informed [Mr. Panchal] that he personally took the profit shares that [Mr. Panchal] earned, paying taxes on the same, as opposed to setting aside these funds to pay [Mr. Panchal] at some point in the future" even though Mr. Sheehan

---

[20] Compl. ¶ 10.
[21] Id.
[22] Id. ¶ 11.
[23] Id.
[24] Id. ¶ 13.
[25] Id.
[26] Id. ¶ 14.
[27] Id. ¶¶ 19-20.
[28] Id. ¶¶ 21-22.
[29] Id. ¶ 26.
[30] Id. ¶¶ 25, 28-29.

"acknowledge[d] . . . that [Mr. Panchal] was owed the profit shares,"[31] This prompted Mr. Panchal to resign on May 9, 2024, and file this litigation.[32] At the time of his resignation, Mr. Panchal had "approximately 74.97 accrued but unused vacation days . . . valued at approximately $31,715."[33]

## C. Procedural History

Mr. Panchal initiated this action on May 28, 2024.[34] On August 9, 2024, Defendants filed their Motion.[35] Mr. Panchal filed his opposition brief on September 6, 2024,[36] and Defendants submitted their reply brief on October 3, 2024.[37] The Court heard oral argument on January 7, 2025.[38] At oral argument, the Court granted Defendants Rule 12(b)(2) Motion to Dismiss Mr. Sheehan for lack of personal jurisdiction.[39] Accordingly, all that remains before the Court is Defendants Rule 12(b)(6) Motion to Dismiss for failure to state a claim.

## III.    STANDARD OF REVIEW

On a Rule 12(b)(6) Motion to Dismiss for failure to state a claim:

> the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[40]

---

[31] *Id.* ¶¶ 30-31.
[32] *Id.* ¶ 32.
[33] *Id.* ¶¶ 33, 56.
[34] *See generally* Compl.
[35] *See generally* MTD.
[36] *See generally* Panchal's Answering Brief in Opposition to Defendants' Motion to Dismiss ("MTD Opp'n") (D.I. 8).
[37] *See generally* Defendants XO Energy Worldwide LLLP, XO Energy LLC, and Shawn Sheehan's Reply Brief in Support of Their Motion to Dismiss ("MTD Reply") (D.I. 9).
[38] Superior Court Proceeding Sheet for Defendants Motion to Dismiss, heard on January 7, 2025 (D.I. 10).
[39] *Id.*
[40] *Techview Inv. Ltd. v. Amstar Poland Prop. Fund I, L.P*, 2021 WL 3891573, at *6 (Del. Super. Aug. 31, 2021).

5

The Court, however, "ignore[s] conclusory allegations that lack specific supporting factual allegations."[41]  In considering a Rule 12(b)(6) motion to dismiss, the Court is limited to the complaint's facts and documents "integral to or incorporated by reference in the complaint."[42]

## IV.    DISCUSSION

Defendants contend all claims should be dismissed under Rule 12(b)(6).[43]  Defendants argue the Complaint fails to state a claim that: (i) Worldwide breached the employment agreement;[44] and (ii) either entity Defendant violated the PWPCL.[45]

### A. The Complaint States a Cognizable Claim that Worldwide Breached Section 4 of the Employment Agreement.

Defendants' first argument asks the Court to dismiss the Counts related to Worldwide's alleged breach of the Employment Agreement.[46]  The Complaint alleges Worldwide breached Employment Agreement Section 4 by failing to pay Mr. Panchal his "awarded" earned profit share.[47]  Section 4 provides:

> In addition to the Base Salary, Employee may be awarded certain incentive compensation (Profits Share) as determined in the sole discretion of the Employer. At the end of each calendar year, Employer shall evaluate whether Employee shall be awarded a share of Profits for the year then ending.[48]

---

[41] *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998).

[42] *Techview*, 2021 WL 3891573, at *6 (citing Super. Ct. Civ. R. 12(b); *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 (Del. 1995)).

[43] MTD at 10-20.

[44] *Id.* at 11-15.

[45] *Id.* at 17-20.

[46] MTD at 11-15.  Count II and Count V both deal with Worldwide's alleged breach of the Employment Agreement. *See* Compl. ¶¶ 46-49; 60-66.  Count II alleges Worldwide failed to pay profit share payments owed to Mr. Panchal under the Employment Agreement. *Id.* ¶¶ 46-49.  Count V seeks declaratory judgment that Worldwide breached the Employment Agreement thereby relieving Mr. Sheehan's obligation to comply with the "non-competition restrictions and non-solicitation restrictions" therein. *Id.* ¶¶ 60-66.  The parties' briefing makes only a passing mention of the Count V claim, instead focusing their arguments on Count II while noting "[a] party is excused from performance under a contract if the other party is in material breach thereof." *BioLife Solutions, Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. Oct. 1, 2003); *see* MTD at 11-15; MTD Opp'n at 13-17; MTD Reply at 8-11.  Accordingly, the Court focuses its discussion to whether the Complaint sufficiently pled Worldwide breached the Employment Agreement, and notes Count V necessarily rises and falls with the answer to that question.

[47] *See* Compl. ¶¶ 9, 13-14, 24, 26, 30-33 46-49.

[48] Employment Agreement § 4.

While the parties claim that language is "unambiguous,"[49] the parties disagree on the language's meaning.[50]

Defendants contend Section 4's plain text does not "create a right or entitlement to profit shares."[51] Rather "Worldwide[] [has] sole discretion to pay or cancel," any profit share "up until the point where the award is paid."[52] Specifically, Defendants note Section 4 states a profit share "may be awarded," to support their contention that Worldwide retained full discretion regarding whether to make a payment.[53] Thus, Worldwide could cancel that payment for any number of factors even if Mr. Panchal was promised a share of the profits.[54] Accordingly, Worldwide contends that the failure to make a profit share payment is not a breach and Mr. Panchal "did not suffer any damages" because Worldwide had no obligation to make such a payment.[55]

Mr. Panchal disagrees with Defendants' reading of Section 4.[56] Mr. Panchal relies on Section 4's "shall determine" and "shall be awarded" language to support his interpretation that once Worldwide determines a profit share should be awarded, payment is obligatory.[57] Panchal asserts, "Worldwide was obligated to determine whether to award Panchal shares, and it elected to award Panchal $4.2 million."[58] If correct, Worldwide's failure to pay the full $4.2 million breached the Employment Agreement.[59]

---

[49] MTD at 13-14; MTD Opp'n at 15.
[50] *See* MTD at 13-15; MTD Opp'n at 14-16.
[51] MTD at 13-14.
[52] *Id.*
[53] MTD Reply at 8.
[54] *Id.*
[55] MTD at 14.
[56] MTD Opp'n at 14-17.
[57] *Id.* at 14-15.
[58] *Id.* at 16.
[59] *Id.*

On a 12(b)(6) motion to dismiss, the Court "cannot choose between two differing reasonable interpretations of [an] ambiguous provision[.]"[60] Rather, dismissal "is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law."[61] A provision is ambiguous when it is "reasonably or fairly susceptible of different interpretations."[62]

Here, Defendants' interpretation of Section 4 is not the only reasonable construction. The phrases "may be awarded" and "in the sole discretion of the employer" can only be read to establish that Worldwide had full discretion regarding whether to grant Mr. Panchal a profit share.[63] However, Section 4 also states Worldwide "shall evaluate whether [Mr. Panchal] shall be awarded a share of Profits."[64] This language appears to obligate Worldwide to engage in some evaluation to determine if Mr. Panchal is entitled to a profit share payment.[65]

Courts have upheld breach claims regarding similar obligations where the employment agreement at issue set forth a "formula" to aid in bonus calculations and the employer failed to make any payments.[66] While the Employment Agreement does not contain a profit share formula, the Complaint does not allege Worldwide "failed to evaluate" whether to award such a bonus. Rather, the Complaint alleges Worldwide decided Mr. Panchal earned a profit share of $4.2 million,[67] but only paid him $400,000.[68]

---

[60] *VLIW Technology, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. Super. 2003) (citing *Vanderbilt Income and Growth Assocs. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del.1996)).
[61] *Id.* (emphasis in original).
[62] *Vanderbilt*, 691 A.2d at 613 (quoting *Kaiser Aluminum Corp. v. Matheson*, 681 A.2d 392, 395 (1996)).
[63] *Poe v. Poe*, 333 A.2d 403, 404 (Del. Super. 1975) ("the use of the word . . . 'may' evokes a discretionary reading.").
[64] Employment Agreement § 4.
[65] *Poe*, 333 A.2d at 404 ("the use of the word . . . '[s]hall' signifies a mandatory requirement.").
[66] *E.g.*, *Murphy v. Pentwater Capital Mgmt. LP*, 2019 WL 3545850, at *3 (Del. Super. July 24, 2019) ("[t]he discretionary provision cited by Defendants cannot be interpreted to prohibit Murphy's breach of contract claim or to insulate the Defendants from liability for any alleged failure to follow defined terms and formulas set forth in the Bonus Plan. In fact, Halbower was to determine Incentive Bonuses 'consistent with the provisions' contained in the Plan. The Court believes Murphy's allegation that the Total Equity Payment was not calculated 'consistent with' the formula set forth in the Bonus Plan is enough to support his breach of contract claim against Defendants." (internal quotes omitted)).
[67] Compl. ¶¶ 13-14.
[68] *Id.* ¶¶ 15, 26.

8

The Employment Agreement is silent regarding what happens if Worldwide "acknowledged . . . that [Mr. Panchal] was owed profit shares," but then refused to pay the full amount.[69] At this stage of the proceedings, both sides have presented plausible readings of Section 4.

Defendants argue that Worldwide retains "sole discretion to pay or cancel," any profit share payment up until it remits the funds to Mr. Panchal.[70] However, the phrase "shall be awarded" can also be read to require Worldwide to pay any profit share it determines Mr. Panchal is entitled to, after conducting the contractually mandated "evaluat[ion]." If correct, the Complaint explicitly alleges Worldwide breached the resulting obligation to pay Mr. Panchal previously awarded profit share bonuses.[71] As discussed above, the Court cannot dismiss Mr. Panchal's breach claims because Section 4 is reasonably susceptible to multiple interpretations and the Complaint alleges Worldwide breached the provision under one of those interpretations. Accordingly, the Court **DENIES** the Motion regarding Counts II and V.

**B. The Complaint Does Not State a Reasonably Conceivable Claim for Violation of the PWPCL Against Worldwide or Energy.**

Defendants also seek dismissal of Counts I and IV, which allege violation of the PWPCL by Defendants.[72] The Motion articulates two primary arguments regarding the PWPCL claims.[73] First, Defendants argue Count I and IV fail because "the Complaint does not state any allegations as to why [Pennsylvania law] should apply."[74] If the PWPCL applies, Defendants nevertheless maintain that the Employment Agreement's Delaware choice of law provision precludes Mr.

---

[69] *Id.* ¶ 30; *see generally* Employment Agreement.
[70] MTD at 12-14.
[71] Compl. ¶ 31.
[72] *See* MTD at 17-20; Compl. ¶¶ 34-45, 55-59.
[73] *See* MTD at 17-20.
[74] MTD at 17.

Panchal from asserting a Pennsylvania law claim against Worldwide.[75] Second, Defendants argue Counts I and IV are not cognizable as to Energy, "because [Mr. Panchal] failed to allege he has a valid employment agreement with Energy[.]"[76]

> 1. **The Employment Agreement's Choice of Law Clause Precludes Mr. Panchal's PWPCL Claim Against Worldwide.**

The PWPCL obligates covered employers to pay employees any "wages or compensation earned . . . not later than the next regular payday," if the employee "quits or resigns his employment."[77] Pennsylvania law broadly defines covered employers to include, "every person [or] firm . . . employing any person in [Pennsylvania]."[78] Though the PWPCL does not define covered employees, Pennsylvania courts have held its "protections . . . extent [] to those employees based in Pennsylvania."[79]

Despite these broad definitions, Defendants maintain the Complaint lacks any allegations regarding why Pennsylvania employment law should apply.[80] Defendants contend, "[a]t best the Complaint alleges that [Mr. Panchal] worked remotely from Pennsylvania for a company located in the Virgin Islands."[81] The Court notes, however, that the Complaint alleges Mr. Panchal "primarily worked from Chester County, Pennsylvania," which suggests the PWPCL applies to Worldwide.[82] Thus, based on the Complaint's language alone, Mr. Panchal's PWPCL claim against Worldwide is cognizable.

---

[75] *Id.*
[76] MTD at 19-20.
[77] 43 PA. STAT. AND CONS. STAT. ANN. § 260.5 (West 2024).
[78] 43 PA. STAT. AND CONS. STAT. ANN. § 260.2a (West 2024).
[79] *E.g.*, *Killian v. McCulloch*, 873 F. Supp. 938, 942 (E.D. Pa. 1995).
[80] MTD at 17.
[81] MTD Reply at 13-14.
[82] Compl. ¶¶ 11, 21

The Court now addresses the argument that the Employment Agreement's choice of law provision precludes Mr. Panchal from asserting a Pennsylvania law claim against Worldwide.[83] The Employment Agreement provides, "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Delaware."[84] Mr. Panchal rejects Worldwide's argument that this language precludes any claim under non-Delaware state law.[85] Mr. Panchal argues that the choice of law provision is narrow and only applies to enforcing the Employment Agreement's terms, not "to causes of action arising from or relating to the Agreement, including [Mr.] Panchal's [P]WPCL claims."[86] Mr. Panchal is correct that courts often differentiate between broad and narrow contractual choice of law provisions, and only apply such provisions to actions "that arise out of or relate to" an agreement, if there is specific language to that effect.[87]

The Employment Agreement's choice of law provision is narrow and does not contain any "arise out of" or "related to" language.[88] This does not compel a result in Mr. Panchal's favor because a PWPCL claim is not one that arises out of an agreement, but rather a mechanism to enforce a contractual wage obligation.[89] Because a PWPCL claim necessarily depends on the existence of an underlying contract, "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions" in PWPCL cases.[90] Indeed, a

---

[83] MTD at 17-18.
[84] Employment Agreement § 9(c).
[85] MTD Opp'n at 19-20.
[86] *Id.*
[87] *Huffington v. T.C. Group, LLC*, 2012 WL 1415930, at *11 (Del. Super. Arp. 18, 2012); *see Gloucester Holding Corp. v. U.S. Tape and Sticky Products, LLC*, 832 A.2d 116, 124 (Del. Ch. Mar. 18, 2003).
[88] *See* Employment Agreement § 9(c).
[89] *See Tomlinson*, 2008 WL 219217 at *8 (noting that the PWPCL does not establish an independent theory of recovery, but empowers employees to enforce their contractual right to wages).
[90] *Tucci v. CP Kelco ApS*, 2002 WL 31261054, at *2 (E.D. Pa. Oct. 10, 2002); *see Synesiou v. Designtomarket, Inc.*, 2002 WL 501494, at *3 (E.D. Pa. April 3, 2002) (applying the PWPCL even though the plaintiff was a California resident and did not work in Pennsylvania, because his employment contract contained a Pennsylvania choice of law clause).

11

Pennsylvania court faced with arguments almost identical to the ones asserted by the parties here, opted to enforce an employment contract's Delaware choice of law provision.[91]

The Court finds this reasoning to be persuasive on the PWPCL claim. Accordingly, the Employment Agreement's choice of law provision controls, and bars Mr. Panchal's PWPCL claim against Worldwide. The Court **GRANTS** the Motion with respect to Worldwide as to any PWPCL claim.[92]

### 2. The Complaint's Failure to Allege an Employment Contract between Mr. Panchal and Energy Bars his PWPCL Claim.

Defendants' final contention is that Counts I and IV fail regarding Energy, "because [Mr. Panchal] failed to allege he has a valid employment agreement with Energy[.]"[93] Energy did not sign the Employment Agreement. Given that the PWPCL does not create an independent basis for recovery, Defendants argue Mr. Panchal's failure to plead breach of an underlying employment agreement defeats Counts I and IV against Energy.[94]

The Complaint does not allege the existence of an employment agreement between Energy and Mr. Panchal. The Court finds that this bars Plaintiff's PWPCL claims. As discussed above, because the PWPCL does not establish an independent basis for recovery, a PWPCL

---

[91] *See Tucci*, 2002 WL 31261054, at *2-3 ("Kelco alleges that the portion of Count II dealing with the PWPCL should be dismissed because the PWPCL is not applicable in this situation. In support of its Motion, Kelco points out that Kelco is located in Delaware, that Tucci was employed in Delaware, and that most importantly, the employment contract contained a Delaware choice of law clause. Tucci counters by stating that the PWPCL should apply because he resides in Pennsylvania, his checks were sent to Pennsylvania, he occasionally worked from home, and that after he stopped working for Kelco, he was available for consulting in Pennsylvania." The court found the PWPCL did not apply because "Tucci was based in Delaware because he was employed as the CEO of a company located in Delaware under an employment contract with a Delaware choice of law clause.").

[92] Recognizing the possibility that the Court would dismiss his PWPCL claims, Mr. Panchal "respectfully requests the ability to amend his Complaint to include claims under the Delaware Wage Payment and Collection Act." MTD Opp'n at 20. The parties, however, did not fully brief the issue of whether the Court should permit Mr. Panchal to amend the Complaint. Thus, the Court does not rule on the amendment issue but will allow Mr. Panchal to file a formal Motion to Amend if he so chooses.

[93] MTD at 19-20.

[94] MTD at 19-20.

claim must be dismissed unless there is an underlying obligation to pay wages.[95]  Mr. Panchal contends the Complaint's allegations that "he was employed by Energy and Energy paid his wages," establish an implied-in-fact employment agreement existed.[96]

Defendants challenge that argument.[97]  Defendants note the Complaint has no allegations referencing any implied-in-fact contract.[98]  Defendants argue the sparse allegations regarding Panchal's work for Energy do not create a reasonable inference that an implied-in-fact contract existed, and Panchal cannot use his answering brief to cure the Complaint's defects.[99]  Additionally, even if an implied-in-fact contract existed, Defendants maintain there are no allegations it "would cover the Incentive Compensation from the written Employment Agreement with Worldwide."[100]  Finally, Defendants claim the Employment Agreement's provision prohibiting any transfer of rights or obligations thereunder, defeats Panchal's assertion that Energy may have assumed Worldwide's obligations under the Employment Agreement.[101]

"An implied-in-fact contract is legally equivalent to an express contract," such that the existence of an implied contract for wages can sustain a PWPCL claim.[102]  To state a claim based on an implied-in-fact contract, "a plaintiff must establish that the parties, through their actions, demonstrated a meeting of the minds on all essential terms of the contract."[103]  Delaware courts have found implied-in-fact contracts in the employment context.[104]

---

[95] *See Tomlinson*, 2008 WL 219217 at *8.
[96] MTD Opp'n at 21.
[97] MTD Reply at 17-18.
[98] *Id.* at 17.
[99] *Id.*
[100] *Id.* at 17-18.
[101] *Id.* at 18 (citing Employment Agreement § 9(f)(1)).
[102] *Ridley v. Bayhealth Medical Center, Inc.*, 2018 WL 1567609, at *7 (Del. Super. Mar. 20, 2018).
[103] *Id.*
[104] *See, e.g.*, *Laser Tone Business Systems, LLC v. Delaware Micro-Computer LLC*, 2019 WL 6726305, at *16 (Del. Ch. Nov. 27, 2019).

Here, the Complaint fails to plead the existence of an implied-in-fact contract between Energy and Mr. Panchal. At the threshold, the Court cannot "consider any materials outside of [the] Complaint for the purpose of deciding the Motion."[105] Accordingly, Mr. Panchal's attempt to clarify allegations in the Complaint in responding to the Motion is not relevant.[106]

As the Court reads the Complaint, the only allegations suggesting an implied-in-fact contract are those alleging "Energy employed [Mr. Panchal] and paid [his] wages."[107] These conclusory assertions do not create a reasonable inference that an implied-in-fact employment contract existed between Mr. Panchal and Energy.

The Complaint contains no allegations regarding what the terms of any implied-in-fact contract were or, critically, that the profit share bonus provision in the Employment Agreement was an included term. Given the Employment Agreement's prohibition on Worldwide transferring its rights and obligations, it is not reasonable to infer Energy simply assumed the contract. Mr. Panchal's vague allegations related to "one or more Defendants,"[108] do not have the required specificity to plead an implied in fact contract existed.[109] Thus, the Complaint does not allege Energy and Mr. Panchal had an implied employment agreement which supports the PWPCL claim.

Accordingly, the Court **GRANTS** the Motion regarding Counts I and IV with respect to Energy.

---

[105] *Murray v. Mason*, 244 A.3d 187, 192 (Del. Super. Dec. 16, 2020).
[106] *Akrout v. Jarkoy*, 2018 WL 3361401, at *3 n.23 (Del. Ch. July 10, 2018), *reargument denied*, 2018 WL 4501174 (Del. Ch. Sept. 19, 2018).
[107] Compl. ¶¶ 11, 22.
[108] *Id.* ¶¶ 13-14, 23-25, 29.
[109] *Cantor Fitzgerald, L.P. v. Cantor, et al.*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998) ("the plaintiff must allege a specific implied contractual obligation.").

14

## V. CONCLUSION

For the foregoing reasons, the Court: (i) **DENIES** the Motion regarding Mr. Panchal's breach of contract claims against Worldwide: (ii) **GRANTS** the Motion regarding Mr. Panchal's PWPCL claims; and (iii) **GRANTS** the Motion regarding Counts I and IV with respect to Energy.

**IT IS SO ORDERED.**

March 31, 2025
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:    File&ServeXpress